(20 P.3d 94)

No. 85,003

STATE OF KANSAS, *Appellee*, v. PERRY A. HILSON, *Appellant*.

Opinion filed March 30, 2001.

*Shawn Minihan*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*William R. Mott*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., LEWIS, J., and BUCHELE, S.J.

PIERRON, J.: Perry A. Hilson was charged with criminal threat and aggravated kidnapping of his estranged wife. The jury acquitted Hilson of the kidnapping charge, but convicted him of criminal threat. Hilson appeals his conviction for criminal threat.

Perry and Darcy Zani Hilson were married after a brief courtship in April 1999. Their divorce was finalized in October 1999. While the couple was separated, Darcy lived with her mother in Wellington. In an effort to reconcile, Perry and his friend, T.L., drove from Wichita to Wellington on the evening of August 9, 1999. Perry sent T.L. to Darcy's house to arrange a meeting. Darcy agreed to meet Perry at a convenience store and followed T.L. in her own car.

Before she left, Darcy advised her mother to call the police if she did not return in 30 minutes. Darcy's mother was under the

impression that a restraining order was in effect against Perry. While Darcy had initiated proceedings against Perry pursuant to the Protection from Abuse Act, she had failed to appear at the hearing.

When Darcy arrived at the convenience store, Perry suggested they go to a quieter, more secluded spot. She agreed to go to Hargis Creek and again drove her own car. Darcy testified that when they arrived at Hargis Creek, Perry became very angry and confronted her about her current boyfriend. Darcy told Perry she wanted to remain friends, and he asked if she wanted to return to Wichita with him.

Darcy testified that she refused to accompany Perry to Wichita. She claimed Perry told T.L. to get a gun and, if Darcy continued to refuse to go to Wichita, to shoot her. Darcy said Perry also instructed T.L. to hit her if she refused again. Darcy capitulated and went to Wichita with Perry and T.L. The remaining course of events relates only to the kidnapping charge, of which Perry was acquitted.

Perry flatly denied making any threats or accusations at Hargis Creek. According to Perry, the conversation at Hargis Creek was pleasant and the two discussed an upcoming trip. Perry testified that he did not confront Darcy about her affair until later in the evening. Although T.L. did not testify at trial, Perry claimed that neither he nor T.L. had brought any weapons with them to Wellington. Perry added he did not carry a gun and, in fact, was afraid of guns. He admitted that Darcy did not want to go to Wichita initially, but said she acquiesced after he begged her.

The State filed an information charging Perry with aggravated kidnapping and criminal threat. The information indicates that the criminal threat charge was predicated on Perry's statement to Darcy that T.L. would shoot her if she refused to go to Wichita with him. At the close of the State's evidence, Perry moved for a judgment of acquittal on both counts. The trial court denied the motion, finding there was sufficient evidence of the threat to shoot Darcy to support the criminal threat charge. The jury was instructed that in order to convict on the criminal threat charge, it must find beyond a reasonable doubt that Perry threatened to com-

mit violence and that the threat was communicated in reckless disregard of the risk of causing terror to Darcy.

Perry argues on appeal that he was denied his right to a unanimous jury verdict. He claims that because there were two possible acts that could have supported the criminal threat conviction, *i.e.*, Perry's threat to have T.L. shoot Darcy and his threat to have T.L. hit Darcy, the jury may not have unanimously agreed on the same act. In a multiple acts case, more than one act is alleged and any one of them could support the crime charged. In these cases, the jury must be unanimous as to which act constitutes the crime. *State v. Kinmon*, 26 Kan. App. 2d 677, 678, 995 P.2d 876 (1999). However, when the evidence establishes a continuous incident that cannot be factually separated, no multiple acts instruction is necessary. *State v. Staggs*, 27 Kan. App. 2d 865, Syl. ¶ 2, 9 P.3d 601 (2000). As a threshold matter, the court must first determine whether Perry's conduct constituted two separate and distinct acts. Whether this was a multiple acts case is a question of law over which this court has unlimited review. *Cf. State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998) (applying a de novo standard to the issue of multiplicitous charges).

The Kansas Supreme Court tacitly adopted the State of Washington's multiple acts analysis of *State v. Kitchen*, 110 Wash. 2d 403, 756 P.2d 105 (1988), in *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994) (distinguishing *Timley* as involving alternative means, not multiple acts). The Kansas Court of Appeals had previously adopted the view that failure to instruct the jury properly in a multiple acts case is structural error mandating reversal. See *State v. Wellborn*, 27 Kan. App. 2d 393, 4 P.3d 1178 (2000), *rev. denied* 269 Kan. 940; *State v. Barber*, 26 Kan. App. 2d 330, 988 P.2d 250 (1999).

After *Kitchen*, Washington refined its multiple acts analysis in *State v. Crane*, 116 Wash. 2d 315, 326, 804 P.2d 10 (1991), holding that, under a "continuous conduct" exception, a unanimous verdict is not required as to individual incidents of a continuing course of conduct during a limited time period. Under the Washington case law, continuous conduct does not require unanimity as to each act so long as the verdict is unanimous as to the conduct. This court

recently carved out a similar exception in *Staggs*. In that case, the defendant was charged with aggravated battery, and there was evidence showing he both punched and kicked the victim. The court determined no unanimity instruction was required because the punching and kicking represented a continuous course of conduct and constituted only one "act" for purposes of the aggravated battery charge. See 27 Kan. App. 2d 865, Syl. ¶ 2.

Perry contends Darcy's testimony at trial indicated the two threats were made at different times. This point is well taken. Even at trial, the State acknowledged there were two different threats. The record is unclear as to the chronology of the events, but it appears that Perry and Darcy stayed at Hargis Creek for approximately 30 minutes. After Darcy recalled Perry's threat to have her shot, the State asked if any similar statements were made at any time. At that point, Darcy testified to Perry's additional threat to have T.L. hit her, but she did not say when the second threat was made.

Perry's conduct, however, still falls under the continuous conduct exception. Both threats took place over a relatively short period of time. Moreover, Perry made both threats to achieve the same objective—to coerce Darcy to go with him to Wichita. Therefore, the conduct in question does not constitute multiple acts and there is no question the jury delivered a unanimous verdict.

Affirmed.