No. 109,503

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL A. CROSSETT,
*Appellant*.

SYLLABUS BY THE COURT

1.

We review a claim that the trial court should be reversed because it failed to give a unanimity instruction in three steps. First, as a threshold matter, the appellate court reviews the entire record to determine whether the case involved multiple acts or a unified course of conduct. If this court finds the defendant's alleged conduct was unitary, then the analysis ends and the trial court is affirmed. If, however, the defendant's actions could have given rise to multiple counts of the charged crime, then it is a multiple acts case and this court proceeds to the next step of the unanimity error analysis.

2.

In the second step of the analysis, the court looks to see whether an error occurred. If the State did not inform the jury as to which act it should rely upon during deliberations and the trial court did not instruct the jury that it must unanimously decide which specific act supported the conviction, error exists.

3.

In the final step, the appellate court looks to see whether the error requires a reversal of the trial court's decision. In doing so, the court applies the "clearly erroneous" provision of K.S.A. 2013 Supp. 22-3414(3) and undertakes a results-based analysis. If the

court is convinced that the jury would have reached a different verdict had the instruction error not occurred, then the error is reversible.

4.

There is no single test for determining whether a multiple acts case exists. Rather, the court must look to the facts and the theory of the crime as argued to determine whether a jury verdict implicates unanimity issues.

5.

Four factors assist in making this determination: (1) whether the acts occurred at or near the same time; (2) whether the acts occurred at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.

6.

No party may challenge a trial court's giving or failure to give an instruction unless that party objects before the jury retires for deliberations, stating distinctly the matter to which the party objects and the grounds for the objection. In the absence of an objection, the claimed error is reversible only if the instruction or the trial court's failure to give the instruction was clearly erroneous. K.S.A. 2013 Supp. 22-3414(3).

7.

To establish that the giving or failure to give an instruction was clearly erroneous, the reviewing court must determine whether there was any error at all. This requires demonstrating that giving the proposed instruction would have been both legally and factually appropriate, employing an unlimited review of the entire record. And if error is found on that basis, then the court moves to a reversibility inquiry in which it assesses whether it is firmly convinced the jury would have reached a different verdict had the

instruction been given. The defendant maintains the burden to establish the degree of prejudice necessary for reversal.

8.

A defendant who introduces evidence of prior bad acts during his or her own direct examination waives the right to a limiting instruction.

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed August 22, 2014. Affirmed.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Bethany J. Graves*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and JOHNSON, S.J.

PIERRON, J.: Daniel A. Crossett appeals his convictions for six counts of aggravated assault, two counts of endangering a child, and one count each of criminal damage to property, reckless driving, and failure to inform after a property accident. Crossett argues it was clear error for the trial court not to give a unanimity instruction for the counts of endangering a child. He also contends it was clear error for the trial court not to give a limiting instruction concerning prior crimes evidence under K.S.A. 2013 Supp. 60-455. Last, Crossett raises an *Apprendi* issue for purposes of preserving federal review. We affirm.

On Monday morning, June 19, 2012, Joseph Evans was heading to work at Accent Pet Grooming in Lawrence. Evans was riding in Scott Dennett's truck. Evans' great niece (A.M.) and great nephew (J.D.M.) were asleep in the back seat. Dennett needed to pick up Haillie Courter at Lakeside Village to give her a ride to work as well. On the way,

Evans got a call from Courter asking if they could give Kimberly Gardner a ride to work. Gardner also worked at Accent.

Evans said that when they drove into Lakeside Village, Gardner was sitting in the middle of the street. She was upset and crying, and she said that Crossett was going to kill her. She repeated this in the truck. Soon thereafter, Courter also got in the backseat of the truck with A.M., J.D.M., and Gardner. As the truck headed down Ferguson Road toward Perry, Evans saw Crossett's red van approaching at a high rate of speed.

Evans testified Crossett was swerving all over the road. Crossett pulled up next to Dennett's truck and with his body half out the window, he yelled at them to pull over. Evans said at one point Dennett drove into the ditch to avoid a collision. Dennett eventually stopped the truck and Crossett began banging on the window and screaming, "I want Kim. I want Kim. I don't want nobody else." Evans thought the window was going to break. Evans yelled at Dennett to take off. Crossett quickly jumped back in his van and chased them. Evans was on the phone with 911 during the incident.

Crossett approached the truck again. This time, Dennett stepped on the brakes and Crossett went around them, lost control of his van, and hit a gas station pump. However, Crossett backed up and gave chase again. Crossett repeatedly tried to force the truck off the road. Ultimately Dennett stopped the truck and Crossett angled his van so the truck could not leave. Crossett came to Evans' window again. Evans told Crossett he was on the phone with 911 and they told him not to let Crossett in the truck or to let anyone leave the truck until the police arrived. Evans thought Crossett had tried to run them off the road at least 20 times and if Dennett had not stopped the truck, Crossett would have hit it.

Dennett tried to leave one more time, but Crossett quickly moved his van to block their path. Dennett struck the driver's side door of Crossett's van. The police arrived and Evans gave a written statement consistent with his testimony. During the trial, the State

4

played the 911 call tapes for the jury. They heard Gardner say she wanted out of the truck. Evans said Gardner was upset and he concluded she wanted out of the truck so Crossett would not cause any more trouble. Evans knew of the troubled past between Gardner and Crossett and also about their drug use.

Crossett claimed this case was not about a jealous and abusive husband who chased down a truck with his wife as a passenger and then tried to run the truck off the road in order to get it to stop. Instead, Crossett testified he and Gardner had been heavily abusing drugs before the incident and she was depressed and suicidal. Crossett testified Gardner had a history of psychiatric problems and drug overdoses that have caused her to be hospitalized. Crossett said he pursued the truck to plead with Gardner to go to the hospital again. Crossett said he never tried to run the truck off the road. Instead, he testified the truck actually hit his van twice, once when it bumped him from the back and sent him into the gas pump; and again when they were stopped the final time and Dennett hit the driver's side door of the van. Crossett claimed he did not know A.M. and J.D.M. were in the back seat until the final stop when Courter was yelling at him, "Quit trying to run us off the road. We have kids in here."

Gardner testified she and Crossett were married by common law for 12 years. She said Crossett was a jealous man. Gardner had snuck out of the house that morning when she thought Crossett was asleep. Gardner had told Crossett they were finished and she was not coming back. The two had argued the night before and Gardner feared for her safety so she did not want Crossett to know she was leaving. Gardner told everyone in Dennett's truck, "Go, go, go. He's going to kill me if he catches you . . . . We need to go now." Gardner confirmed that Dennett had to repeatedly avoid Crossett's van or they would have been hit. Gardner said she wanted out of the truck because she was putting everybody's life in danger, it was scaring the children, and Crossett would then leave the truck alone. Gardner testified they yelled at Crossett that kids were in the truck. Gardner

5

told officers she had used methamphetamines with Crossett the night before and she was probably coming down off the drugs.

The State charged Crossett with six individual counts of aggravated assault with a deadly weapon involving Gardner, Dennett, Evans, Courter, A.M., and J.D.M, severity level 7 person felonies; two counts of aggravated endangering a child (A.M. and J.D.M.), severity level 9 person felonies; and one count each of criminal damage to property, a severity level 9 nonperson felony, reckless driving, an unclassified misdemeanor, and failure to inform interested persons of a vehicle accident involving unattended property, a class C misdemeanor.

The jury convicted Crossett of the six counts of aggravated assault with a deadly weapon, criminal damage to property, reckless driving, and failing to provide certain information after an accident. The jury did not convict Crossett of aggravated endangering a child, but convicted him of two counts of the lesser crime of endangering a child. Based on Crossett's extensive criminal history, the trial court sentenced him to 29 months' imprisonment for the first count of aggravated assault and then a consecutive sentence of 12 months' imprisonment on the second count of aggravated assault. For the remaining counts of aggravated assault, the trial court entered concurrent sentences of 12 months. The court also ordered concurrent sentences of jail time of 12 months for endangering a child, 6 months for criminal damage to property, 30 days for reckless driving, and 30 days for failure to inform after a property accident.

Crossett appeals.

Crossett first argues on appeal that it was clear error for the trial court not to give a unanimity instruction for the two counts of aggravated child endangerment. He argues the jury could have relied on two separate acts in convicting him of child endangerment: (1) attempting to run the truck off the road, or (2) causing a collision by moving his van to

6

block the truck after the vehicles had come to a stop. Crossett claims that without a unanimity instruction it is unclear which act the jury relied on and the jury would likely have been unable to reach a unanimous verdict if the instruction had been given.

Whether the elements of a crime could have been established by one of many acts or whether the crime involved a single continuous act is a question of law over which this court has unlimited review. *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 (2007). Under Kansas law, a defendant is entitled to a unanimous jury verdict. K.S.A. 22-3421; *State v. Stevens*, 285 Kan. 307, 313, 172 P.3d 570 (2007). This means that in a case where multiple, several, and distinct acts are alleged and any one of the acts could constitute the charged crime, either the State must instruct the jury on which act it is relying for the charge or the court must give an instruction to the jury that they must all unanimously agree on the specific act constituting the charged crime. *State v. Colston*, 290 Kan. 952, 968, 235 P.3d 1234 (2010). This instruction protects the unanimity of a verdict because without such an election or instruction, jurors could convict a defendant without unanimous agreement on which act constituted the charged crime.

We review a claim that the trial court should be reversed because it failed to give a unanimity instruction in three steps. See *State v. King*, 297 Kan. 955, 978-84, 305 P.3d 641 (2013). First, as a threshold matter, the appellate court reviews the entire record to determine whether the case involved multiple acts or a unified course of conduct. *Voyles*, 284 Kan. at 244. If this court finds the defendant's alleged conduct was unitary, then the analysis ends and the trial court is affirmed. 284 Kan. at 244. If, however, the defendant's actions could have given rise to multiple counts of the charged crime, then it is a multiple acts case and this court proceeds to the next step of the unanimity error analysis. 284 Kan. at 244.

In the second step of the analysis, we look to see whether an error occurred. 284 Kan. at 244-45; accord *Colston*, 290 Kan. at 968. If the State did not inform the jury as to

which act it should rely upon during deliberations and the trial court did not instruct the jury that it must unanimously decide which specific act supported the conviction, error exists. *King*, 297 Kan. at 979.

In the final step, this court looks to see whether the error requires a reversal of the trial court's decision. 297 Kan. at 979. In doing so, this court applies the "clearly erroneous" provision of K.S.A. 2013 Supp. 22-3414(3) and undertakes a results-based analysis. *Voyles*, 284 Kan. at 245-47; see *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013). If this court is convinced that the jury would have reached a different verdict had the instruction error not occurred, then the error is reversible. *King*, 297 Kan. at 980 (citing *Trujillo*, 296 Kan. at 631).

For the threshold determination, we must decide whether Crossett's conduct was part of a single course of conduct or if it was composed of separate and distinct acts. *King*, 297 Kan. at 980-81. There is no single test for determining whether a multiple acts case exists. *State v. Castleberry*, 48 Kan. App. 2d 469, 484, 293 P.3d 757, *rev. granted* 298 Kan. ___ (2013). "[R]ather the court must look to the facts and the theory of the crime as argued to determine whether a jury verdict implicates unanimity issues." 48 Kan. App. 2d at 484 (citing *State v. Allen*, 290 Kan. 540, Syl. ¶ 2, 232 P.3d 861 [2010]). Four factors assist in making this determination: "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.'" *King*, 297 Kan. at 981 (quoting *State v. Schoonover*, 281 Kan. 453, 503, 507, 133 P.3d 48 [2006]).

Under the first *Schoonover* factor, we must consider Crossett's actions and determine whether they occurred at or near the same time. The time frame of his event was approximately 15 minutes from the time Dennett left Lakeside Village until police arrived at the scene. Evans testified they were stopped for "the longest five minutes of my

life" before the police arrived. Here, the actual chase took approximately 10 minutes and this relatively short time frame points to Crossett's actions being a single continuous course of conduct.

Under the second *Schoonover* factor, we next consider whether Crossett's actions occurred at the same location. The chase in this case covered approximately 7 miles on Ferguson Road. The fact that the alleged acts took place at multiple locations points to Crossett's actions being a multiple acst situation.

Under the third *Schoonover* factor, we consider whether Crossett's actions all had a causal relationship or whether there was an intervening event. In this case, there was no intervening act to separate Crossett's actions. From the time Crossett began the chase down Ferguson Road, he was continually engaged with Dennett's truck in his attempt to get Dennett to pull over. Although Crossett was temporary sidetracked by hitting the gas pump, and there was an intermediate stop, Crossett's actions still constituted a continual course of conduct with no intervening events.

Under the fourth *Schoonover* factor, we consider whether some of Crossett's actions were motivated by a "fresh impulse." Crossett claims he had a fresh impulse when he realized there were children in the back seat of the truck. Crossett's testimony is the only evidence of this defense. Certainly, Crossett can make this claim, but there is no supporting evidence. See *State v. Anderson*, 287 Kan. 325, 331, 197 P.3d 409 (2008) (A defendant is entitled to an instruction on his or her theory of the case even though the evidence thereon is slight and supported only by the defendant's own testimony.). Although Crossett's actions can be broken down into natural breaks—first stop, gas station pump accident, final stop—Crossett's impulse remained the same. That impulse was his testimony that he was concerned for the safety of his wife because of her drug overdose and she needed to go to a hospital. There is no evidence he ever expressed

9

concern for anyone but his wife. From the time he engaged the truck until the time the police arrived, this was a single continuous action, and there was no fresh impulse.

In the myriad of multiple acts cases in Kansas jurisprudence, several of them are relevant for application of the *Schoonover* factors to the present case. In *State v. Kesselring*, 279 Kan. 671, 112 P.3d 175 (2005), the Kansas Supreme Court addressed whether a unanimity jury instruction was required for an aggravated kidnapping charge. In that case, the defendant had ordered the victim out of his house at gunpoint and into the car the defendant was driving; the victim had briefly escaped from the car at a yield sign but was ordered back at gunpoint. The defendant then ordered the victim out of the car before shooting and killing him. *Kesselring* held that the kidnapping incident "was not susceptible to dissection into further components that would constitute multiple acts; rather, it was a continuous incident that cannot be factually separated. Therefore, we find this was not a multiple acts case and no multiple acts instruction was necessary to ensure that the jury's verdict was unanimous." 279 Kan. at 683.

Likewise, in *State v. Staggs*, 27 Kan. App. 2d 865, 9 P.3d 601 (2000), a defendant convicted of aggravated battery argued on appeal that the battery charge could have been established when he kicked the victim or when he punched the victim with his fist. In rejecting his multiple acts argument on appeal, this court noted that "[o]nce defendant initiated the altercation, no break in the action of any length occurred, and the confrontation continued until defendant broke the victim's cheekbone. Simply put, the evidence established a continuous incident that simply cannot be factually separated." 27 Kan. App. 2d at 868.

In *State v. Hilson*, 28 Kan. App. 2d 740, 20 P.3d 94 (2001), within a 30-minute time frame, the defendant committed two acts: he threatened to have T.L. (his friend) shoot the victim and threatened to have T.L. hit her. The court held both actions had the same objective—to coerce the victim to go with the defendant to Wichita. Despite this

extended time period, the Court of Appeals concluded: "The conduct in question does not constitute multiple acts." 28 Kan. App. 2d at 743.

A road-rage case that seems particularly apropos is *State v. Bischoff*, 281 Kan. 195, 131 P.3d 531 (2006). Mary Frayser was driving her Honda Accord in a construction zone on Interstate 35 in Salina. Bischoff came up quickly on Frayser in his semi-trailer and traveled closely behind her. He flashed his headlights and honked his horn. Bischoff continually slowed down and then sped up to the rear of her car during the 8 miles that she traveled south in the construction zone. Frayser stated she was traveling approximately 60 miles per hour, the posted speed limit in the construction zone.

Bischoff followed Frayser when she exited and then drove around her car, nearly hitting it. Then Bischoff forced Frayser to slam on her brakes to avoid hitting the semi. Bischoff approached Frayser's car and yelled: "You know what a F'n truck like that can do to a F'n car like this?"; "Can't you go the F'n speed limit?"; and "Get out of the F'n car, I'm going to kill you." Frayser began honking her horn for help. As he drove away, Bischoff made an obscene hand gesture and yelled at Frayser. A jury convicted Bischoff of aggravated assault and criminal threat.

In the State's closing argument, the prosecutor argued that Bischoff was guilty of aggravated assault because his intentional actions placed Frayser in reasonable apprehension of immediate bodily harm not only while on the interstate, but also through his cutting off her car on the exit ramp. In *State v. Bischoff*, No. 91179, 2005 WL 1089035, *12-13 (Kan. App. 2005) (unpublished opinion), the Court of Appeals affirmed the criminal threat conviction, but it reversed and remanded the aggravated assault conviction. It held that Bischoff's act of following Frayser on to the exit ramp was a separate and distinct act from his actions while on the interstate. Accordingly, the court held that the trial court erred in refusing to give a unanimity instruction.

11

The Supreme Court reversed the Court of Appeals. The *Bischoff* court relied on *Kesselring*, *Staggs*, and *Hilson* in concluding that Bischoff had a design or objective. He acted on that objective to express his extreme displeasure with Frayser's driving and it soon escalated into road rage lasting approximately 8 minutes. 281 Kan. at 203. The *Bischoff* court noted defense counsel's comment at oral argument that "if the prosecutor had charged two counts of aggravated assault, *i.e.,* one for Bischoff's conduct on the interstate and the other after he followed Frayser onto the exit ramp, she would have argued multiplicity." 281 Kan. at 203-04. The *Bischoff* court concluded this was not a multiple acts case and no unanimity instruction was necessary. 281 Kan. at 204.

After considering Crossett's actions within the context of the four factors set out in *Schoonover*, and the factual scenarios of *Bischoff*, *Kesselring*, *Staggs*, and *Hilson*, Crossett's actions were not multiple acts but constituted one single continuous course of conduct. Crossett's testimony failed to establish any meaningful break in the action that would establish separate acts. Although the events transpired over several miles, there were no breaks in the sequence of events sufficient to establish separate criminal acts. Similar to *Bischoff*, if the State had charged Crossett with separate counts of aggravated child endangerment based on events before and after the final stop, defense counsel would undoubtedly be raising a claim of multiplicity. The incident here was not susceptible to dissection into further components that would constitute multiple acts; rather, it was a continuous incident that cannot be factually separated. As a result, it was not clearly erroneous for the trial court to not give a unanimity instruction because Crossett's case did not involve multiple acts.

Next, Crossett argues it was clear error for the trial court not to give a limiting instruction for evidence of his past abusive behavior towards Gardner.

No party may challenge a trial court's giving or failure to give an instruction unless that party objects before the jury retires for deliberations, stating distinctly the matter to

12

which the party objects and the grounds for the objection. In the absence of an objection, the claimed error is reversible only if the instruction or the trial court's failure to give the instruction was clearly erroneous. K.S.A. 2013 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013).

Our Supreme Court has further stated:

"To establish that the giving or failure to give an instruction was clearly erroneous, the reviewing court must determine whether there was any error at all. This requires demonstrating that giving the proposed instruction would have been both legally and factually appropriate, employing an unlimited review of the entire record. [Citation omitted.] And if error is found on that basis, then the court moves to a reversibility inquiry in which it assesses whether it is firmly convinced the jury would have reached a different verdict had the instruction been given. The defendant maintains the burden to establish the degree of prejudice necessary for reversal. [Citation omitted.]" *State v. Littlejohn*, 298 Kan. 632, 646, 316 P.3d 136 (2014).

The relevant provisions of K.S.A. 2013 Supp. 60-455 state:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.
"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

During the state's case-in-chief, testimony was presented by Evans in the form of general statements about the abusive relationship between Crossett and Gardner. Evans had seen bruises on Gardner's arms, and he had told Gardner she needed to get out of the

13

relationship. Crossett states this evidence may have been admissible to prove a material fact, *i.e.*, the victims' reasonable apprehension of immediate bodily harm due to their knowledge of the abuse. However, Crossett argues the evidence was not admissible to prove propensity, *i.e.*, that he was likely to act violently during the incident in question, and the trial court should have given the jury a limiting instruction that the evidence of abuse was not admissible to prove propensity. Crossett argues this evidence prejudiced the jury and the trial court should have given the limiting instruction.

In *State v. Breeden*, 297 Kan. 567, 304 P.3d 660 (2013), the court held that a contemporaneous objection to other crimes evidence was not required to preserve a jury instruction issue on appeal. See 297 Kan. at 579-80. The *Breeden* court found the defendant did more than assert an evidentiary argument as an instructional issue as in *State v. Rojas–Marceleno*, 295 Kan. 525, 285 P.3d 361 (2012). *Breeden*, 297 Kan. at 580. In *Breeden*, the defendant argued the trial court "'should have instructed the jury that evidence has been admitted tending to prove that the defendant committed crimes other than the crime charged, and that the jury was not to consider that evidence of Mr. Breeden's propensity to commit a criminal act.'" 297 Kan. at 580. The *Breeden* court then applied the clearly erroneous standard to find that the failure to give a limiting instruction was error, but it was not reversible error. 297 Kan. at 581.

The State is correct that defense counsel was the party that elicited several specific prior bad acts to the jury. During Evans' cross examination, defense counsel elicited a quote from Evans that Gardner said, "He's kept me hostage for the last day," and that had also happened to her before. Also, during Gardner's cross-examination, defense counsel elicited testimony from Gardner that Crossett would not threaten her in public but that "the night before he had me sitting in a chair. He had a fire log like this thick (indicating). He told me if I moved, he would bash my head in. So I knew he was angry at me from the time he woke up." Last, during the defense's case-in-chief, defense counsel asked Crossett if he had ever hurt Gardner. Crossett testified, "Yes." Defense counsel asked in

14

what way, and Crossett responded, "Well, Kim and I fought a lot." A defendant who introduces evidence of prior bad acts during his or her own direct examination waives the right to a limiting instruction. *State v. Gunby*, 282 Kan. 39, 57-58, 144 P.3d 647 (2006); *State v. Chatmon*, 234 Kan. 197, 203, 671 P.2d 531 (1983).

Even if the trial court erred by failing to give the limiting instruction, we are not firmly convinced that the jury would have reached a different verdict had the instruction been given. Thus, the trial court's failure to give the instruction was not clearly erroneous. See *Littlejohn*, 298 Kan. at 646. We add that even if we were not applying the clearly erroneous standard of review, we would still conclude that the trial court's failure to give the limiting instruction was harmless error under the facts of this case. There is no reasonable probability the error affected the outcome of the trial in light of the entire record and the evidence of Crossett's attempts to run Dennett off the road, the fear of the occupants in Dennett's truck, and the collision with the gas pump. See *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). The trial court's failure to give the limiting instruction did not affect Crossett's substantial rights, and he is not entitled to a new trial based on this claimed error.

Last, Crossett contends the trial court violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). In particular, he argues the trial court could not consider his criminal history unless it was proven to a jury beyond a reasonable doubt. Nevertheless, Crossett concedes the Kansas Supreme Court has previously decided this issue and states he simply wishes to preserve the claim for federal review. See *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

We are bound to follow precedent from the Kansas Supreme Court unless there is an indication that it is departing from its position. *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). Recently, our Supreme Court declined to depart from its holding in *Ivory*. See *State v. Frierson*, 298 Kan. 1005,

15

1022, 319 P.3d 515 (2014). Thus, we conclude the trial court appropriately considered Crossett's criminal history in determining his sentence.

Affirmed.