NOT DESIGNATED FOR PUBLICATION

No. 127,237

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACOB LEVI WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Submitted without oral argument. Opinion filed April 17, 2026. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and ISHERWOOD, JJ.

ISHERWOOD, J.: Jacob Levi Williams stands convicted of aggravated indecent liberties with a child and three counts of rape following a jury trial. The State neglected to include Williams' age in its initial complaint that charged aggravated indecent liberties with a child. An offender's age is an essential element that must be established in connection with that offense before they can be subject to the enhanced sentence that requires the offender to serve a 25-year minimum prison term before they are eligible for parole. Three weeks prior to trial the State moved to amend its complaint to cure that

1

deficiency. The district court reopened the preliminary hearing for the State to present evidence of Williams' age, after which it allowed the complaint to be amended.

On appeal, Williams argues that the district court abused its discretion by affording the State an opportunity to amend its complaint. But K.S.A. 22-3201(e), allows amendments "any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." Here the amendment charged the same crime as that alleged by the State in its original complaint. It also did not result in prejudice to Williams because he was only required to defend against that evidence which he already anticipated under the original complaint.

Williams' second claim of error alleges the district court erred by failing to issue a unanimity instruction for the jury.

Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Williams and his three children lived with his parents and his brother, J.W., at his parents' residence. In early 2022, Williams relocated to a different state to start a new job and planned for the children to eventually move and join him.

In May 2022, M.W. and her brothers were chatting within earshot of their uncle, J.W. The boys commented how great their father was which prompted M.W. to retort that Williams was not a good father because he raped her. J.W. overheard M.W.'s claim and immediately shared it with his father. M.W.'s grandmother took M.W. to the local police department to report the allegations.

2

Based on M.W.'s disclosures, the State charged Williams with one count of aggravated indecent liberties with a child, an off-grid felony. In its initial complaint, however, it omitted Williams' age, which is considered an essential element of that off-grid offense. The State also charged Williams with three counts of rape, a severity level 1 person felony, or in the alternative, three counts of aggravated indecent liberties with a child, a severity level 3 person felony, specifically for engaging in sexual intercourse with M.W.

Roughly one month before trial, the State moved to amend the complaint for the limited purpose of inserting Williams' age under count one. Williams moved to dismiss the charge citing the State's failure to present evidence of that fact during the preliminary hearing. The district court reopened the preliminary hearing to allow the State to present evidence as to Williams' age, after which it granted the State leave to amend its complaint, and the case proceeded to trial.

*Count 1: Aggravated indecent liberties with a child (lewd fondling)*

At trial, M.W. testified that the first sexual contact Williams perpetrated against her occurred when she was only 10 or 11 years old and in the fifth grade. She explained that she returned home from school one day and Williams was asleep in his room, so she crawled into bed to take a nap with him. M.W. later awoke to find her pants pulled down to her thighs and Williams rubbing his genitals against her bare buttocks. According to M.W., she endured the act for 10 to 20 minutes before she was able to go downstairs to use the bathroom, at which time she found "white stuff" in her underwear.

*Count 2: Rape or, in the alternative, aggravated indecent liberties with a child (sexual intercourse)*

M.W. next testified that when she was around 13 or 14 years old Williams started giving her bare-bottom spankings and continued to do so until he left the state for his new

job. She also told the jury that Williams frequently subjected her to what he referred to as "cavity searches" during the spankings which, in part, involved his digital penetration of her vagina. M.W. described a particular instance during the summer of 2021, when she and a friend went to the city pool. Williams showed up at the pool and became angry because M.W. was around boys. Williams took M.W. and her friend back to the home and then made M.W. come to his room while her friend stayed in M.W.'s room. M.W. testified that Williams spanked her and performed a "cavity search."

*Count 3: Rape or, in the alternative, aggravated indecent liberties with a child (sexual intercourse)*

M.W. testified about another incident that occurred with Williams, this time when she was 15 years old. M.W. awoke to the sound of Williams coming down the stairs late at night. He entered M.W.'s bedroom, slid into bed with her, then touched her breasts and vagina under her clothes and eventually digitally penetrated her vagina. Williams told M.W. that she was lucky he was not going to beat her or would not beat her until the following day, and then remained in bed with her until her alarm went off for school.

*Count 4: Rape or, in the alternative, aggravated indecent liberties with a child (sexual intercourse)*

The final incident that M.W. detailed for the jury occurred around Christmastime in 2021. She and Williams both had guests visiting the home and Williams supplied her and her friends with alcohol. After all the guests left, Williams directed M.W. to come to his room. Once she was in the bedroom, Williams spanked her and performed another "cavity search." Then he flipped M.W. onto her back, put a pillow over her head, and put his mouth on her vagina. A few moments later Williams penetrated her vagina with his penis and expressed his love but called her by her mother's name. Williams ejaculated onto the bed shortly thereafter, then pulled up M.W.'s pants and told her to go to bed.

4

Shortly after M.W.'s disclosure, Williams was interviewed by law enforcement officers but consistently denied the allegations made against him. He maintained his innocence at trial and testified that M.W. simply did not want to move to a different state. According to Williams, M.W. allegedly warned him that if he did not emancipate her and allow her to remain in Kansas, she would bring false abuse allegations against him.

Williams did not deny disciplining M.W. and testified about concerns he had that she was sneaking out and drinking alcohol. He acknowledged spanking her as a form of punishment but told the jury that he initially did so with a spatula, while M.W. was clothed. He explained that it only shifted to bare-bottom spankings after M.W. grabbed the spatula from him and threw it behind her bed.

The elements instruction issued by the district court for the rape charges with aggravated indecent liberties as an alternative offense, read:

"INSTRUCTION NO. 5

"The defendant is charged with Rape. The defendant pleads not guilty.

"To establish this charge, the State must prove each of the following claims:

1. The defendant knowingly engaged in sexual intercourse with M.K.W.
2. M.K.W. did not consent to sexual intercourse.
3. The sexual intercourse occurred under circumstances when M.K.W. was overcome by force or fear.
4. This act occurred between the 1st day of December, 2021, and the 31st day of December, 2021, in Dickinson County, Kansas.

"'Sexual intercourse' means: any penetration of the female sex organ by a finger, the male sex organ, or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse."

5

"INSTRUCTION NO. 6

"The defendant is charged with Aggravated Indecent Liberties with a Child. The defendant pleads not guilty.

"To establish this charge, the State must prove each of the following claims:

1.  The defendant had sexual intercourse with M.K.W.

2.  At the time of intercourse, M.K.W. was 14 or 15 years old. The State need not prove the defendant knew the child's age.

3.  This act occurred between the 1st day of December, 2021, and the 31st day of December, 2021, in Dickinson County, Kansas."

Williams requested a jury unanimity instruction but the district court declined to issue one because it did not believe Williams' case presented a multiple acts issue as required to warrant the instruction. The jury found Williams guilty as charged on all counts. The district court imposed 155-month prison sentences for each of Williams' three rape convictions; two of which were to be served consecutively prior to the 25 years to life sentence imposed for the off-grid aggravated indecent liberties with a child conviction. The third rape sentence was to be served concurrently with the hard 25 sentence.

Williams now brings his case before this court seeking a determination of whether the district court's decisions concerning the amendment of the State's complaint and the propriety of a unanimity instruction were legally sound or whether he is entitled to a reversal of his convictions.

LEGAL ANALYSIS

I. *The district court did not abuse its discretion in granting the State's pretrial request to amend its complaint.*

Williams' first allegation of error arises out of the permission granted by the district court for the State to amend its complaint, and he submits a two-point inquiry for

6

our analysis. He first contends that the district court abused its discretion simply by allowing the State to amend its complaint to include his age among the elements for the off-grid charge of aggravated indecent liberties with a child. The second layer of his argument is a claim that the district court then compounded its error by reopening the preliminary hearing to allow the State to present the necessary evidence to establish his age.

This court reviews a district court's decision to grant a motion to amend a complaint for abuse of discretion. A decision by the district court falls in this category when it is based on an error of law or fact, or can be considered arbitrary, fanciful, or unreasonable. *State v. White*, 316 Kan. 208, 213, 514 P.3d 368 (2022). The party asserting the district court abused its discretion bears the burden of demonstrating that such abuse occurred. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). Williams does not categorize the district court's conduct as either legally or factually erroneous, so we are left to determine whether the decision at issue was objectively unreasonable. *State v. Mitchell*, 320 Kan. 775, 778, 571 P.3d 604 (2025). Or stated another way, we must decide whether "'no reasonable person would have taken the view adopted by the trial court.'" *State v. Boswell*, 314 Kan. 408, 416, 499 P.3d 1122 (2021).

A district court's authority to allow the amendment of a complaint is governed by K.S.A. 22-3201(e), which permits amendments "at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." We have carefully analyzed each of these factors in the context of Williams' case and are not persuaded that either avenue affords him relief. Each prong of the inquiry will be addressed in turn.

*The amended complaint did not charge an additional or different crime.*

Williams was charged with aggravated indecent liberties with a child in violation of K.S.A. 21-5506(b)(3), a severity level 3, person felony. For offenders who have a criminal history score of I, like Williams, this offense carries a presumptive prison term with a sentencing range of 55 to 61 months. K.S.A. 21-6804(a). A dramatic shift occurs, however, when the perpetrator of that offense is 18 years of age or older, as Williams was, when the offense is committed. Under those circumstances, the crime is statutorily classified as an off-grid person felony and requires the offender to serve a mandatory minimum prison sentence of 25 years before they are eligible for parole. K.S.A. 21-5506(c)(3); K.S.A. 21-6627(a)(1)(C). As a result, age is considered an essential element of the off-grid charge, which means that the State is required to submit a defendant's age to a jury and prove it beyond a reasonable doubt before a court can impose the sentence that aligns with the off-grid severity offense. *State v. Brown*, 298 Kan. 1040, 1045, 318 P.3d 1005 (2014).

Williams argues that amending the complaint to include his age converted the offense such that it alleged a different crime. This argument is not compelling. The statute that defines aggravated indecent liberties with a child establishes "two separate *levels* of the offense," not two separate offenses. (Emphasis added.) *State v. Bello*, 289 Kan. 191, 198, 211 P.3d 139 (2009).

The Kansas Supreme Court explored this principle in *State v. Matson*, 260 Kan. 366, 921 P.2d 790 (1996). In that case, the complaint charged Matson with first-degree premeditated murder and, in the alternative, first-degree felony murder. The State's outline of the elements it was required to prove for the premeditated theory of the offense neglected to include that Matson acted "'maliciously'" and "'deliberately.'" 260 Kan. at 369. After the close of evidence but before the case was submitted to a jury, Matson moved to dismiss the first-degree premeditated murder charge for failure to allege the

8

requisite statutory elements. Instead of dismissing the charge, the district court allowed the State to amend the complaint to include the missing elements.

On appeal, Matson took the position that the State's failure to include all the necessary elements in its original complaint meant he was never actually charged with first-degree premeditated murder. Thus, when the State amended the complaint to cure the defect, it necessarily resulted in a new charge for a different offense. The Kansas Supreme Court noted that while the original complaint failed to allege every required element for the theory that the murder was premeditated, each of those required to establish first-degree felony murder were properly alleged. The court clarified that the manner in which the murder was committed, either premeditated or in the course of a specific felony, does not convert the offenses into different crimes as contemplated when analyzing an amended complaint. Rather, they are simply separate theories under which the crime of first-degree murder could be committed. 260 Kan. at 370-72.

Similar to the way Williams framed the issue for us to analyze, Matson also argued that a disparity in the sentences for the two offenses was an indication they were classified as different crimes. In Matson's case, first-degree premeditated murder carried the possibility of a hard 40 sentence while a conviction for felony murder did not. The court rejected this argument, stating simply that a "sentence is just that, a sentence—not a separate crime." 260 Kan. at 372.

Allowing the State to amend its complaint in the wake of the preliminary hearing to include Williams' age as part of the aggravated indecent liberties charge merely created the potential for him to receive the enhanced sentence for that offense; it did not charge an additional or different crime.

*Williams' substantial rights were not prejudiced.*

As noted above, the second aspect of Williams' claim of error requires us to consider whether the amendment resulted in prejudice to Williams' substantial rights. Williams' assertions as to why this contention entitles him to relief are rather scant and not particularly cogent. He essentially revisits the first factor and argues that he suffered prejudice because the State subjected him to a new offense. Again, the State did not charge Williams with a new offense. Further, to be successful, a claim of prejudice in this analysis must highlight more than a charge for a new or different crime. To allow otherwise would render the statutory two-part standard redundant. K.S.A. 22-3201(e); see also *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006) ("[E]ven the charging of a different crime may be allowed by an amendment to a complaint before trial, provided the substantial rights of the defendant are not prejudiced.").

The analysis we were able to undertake with the information provided did not yield an outcome that was favorable to Williams. Rather, we are satisfied that reopening the preliminary hearing to afford the State the opportunity to clarify which variation of aggravated indecent liberties it intended to charge did not result in substantial prejudice to Williams. Looking back at the State's initial complaint, we note it bears multiple indications that it was always the State's intent to charge Williams with the off-grid level of the offense. Those clues included: (1) the inclusion of M.W.'s month and year of birth in the complaint; (2) the citation to the specific subsection Williams was alleged to have violated, K.S.A. 21-5506(b)(3)(A), in conjunction with K.S.A. 21-5506(c)(3), which classifies that offense as an off-grid person felony when the offender is 18 years of age or older; and finally, (3) the complaint's reference to the penalty as imprisonment without the possibility of parole for 25 years, a sentencing option that only exists when a defendant is 18 years of age or older when the act is committed. Thus, even though Williams' age was not explicitly alleged, it was implicit from the complaint as a whole

and would have allowed Williams to formulate his defense and the evidentiary foundation he intended to rely on.

Our Supreme Court has stated that "[a] complaint . . . that names a defendant or otherwise identifies him or her inherently includes his or her age on the date of the alleged offense." *State v. Dunn*, 304 Kan. 773, 813, 375 P.3d 332 (2016). Questioning the adequacy of notice to a defendant of his or her own age, the court said, is not "logically possible." 304 Kan. at 813. Furthermore, our Supreme Court has previously upheld a conviction for off-grid aggravated indecent liberties with a child where the charging document did not allege a defendant's age. *State v. Reyna*, 290 Kan. 666, 678, 234 P.3d 761 (2010) (finding no prejudice in omission of age from charging document where defendant did not argue "that the preparation of his defense was impeded or that his right to a fair trial was impaired by the complaint"), *overruled on other grounds by Dunn*, 304 Kan. 773. Thus, Williams has not demonstrated that the district court's decision to grant the State leave to amend its complaint resulted in substantial prejudice.

Williams has also failed to demonstrate that he suffered substantial prejudice because of the precise manner in which the complaint was amended—reopening the preliminary hearing. The district court soundly reasoned there was already sufficient circumstantial evidence of Williams' age presented at the initial preliminary hearing. A somewhat analogous issue arose in *State v. Lingenfelter*, No. 121,953, 2021 WL 1836441, at *3-4 (Kan. App. 2021) (unpublished opinion), and the case provides an illustration of how circumstantial evidence of a person's age was analyzed by a reviewing court, albeit the issue in *Lingenfelter* arose in the context of a challenge to the sufficiency of the evidence to sustain a conviction.

Shane Lingenfelter was charged with domestic battery, an offense for which the offender's age played a critical role. Specifically, that crime requires a finding that at the time of the offense, the offender and the victim were "'family or household member[s].'"

K.S.A. 2018 Supp. 21-5414(e)(2). The statute defines such individuals as those who are "18 years of age or older who are spouses, former spouses, parents or stepparents and . . . presently residing together or who have resided together in the past, and persons who have a child in common regardless of whether they have been married or who have lived together at any time." K.S.A. 2018 Supp. 21-5414(e)(2).

The victim in Lingenfelter's case was his wife of 13 years, Rachel, who was also the mother of his three children, the eldest of which was 12 years old. On appeal, Lingenfelter argued he was entitled to a reversal of his conviction because the State failed to introduce any direct evidence that established Rachel was 18 years or older when the battery occurred. Our court was not persuaded and instead concluded that it was reasonable for the jury to presume that a woman who was married for 13 years and a mother for 12 of those years was over the age of 18, and that any conclusion to the contrary would have been unreasonable. 2021 WL 1836441, at *4.

Williams' case arises in a distinctly different context, but the circumstantial nature of the evidence is similar, as are the inferences that can reasonably be drawn therefrom. Here, the evidence established that M.W. was in fifth grade at the time of the act that resulted in the charge of aggravated indecent liberties. Thus, for Williams to have been under the age of 18 when he committed that act would have required him to be 8 or 9 years old when M.W. was conceived. As in *Lingenfelter*, such a conclusion falls short of what might be considered reasonable. Thus, the district court properly concluded Williams' age was already disclosed through circumstantial evidence in the case. The only practical effect of the district court's decision to allow the State to amend the complaint was to make a fact implicit in the complaint more explicit.

The district court only reopened the preliminary hearing "out of an abundance of caution." The additional testimony elicited was brief, spanned less than two pages of the transcript, and introduced evidence that could not have been of any surprise to Williams.

12

Kansas appellate courts have "consistently . . . given the State considerable latitude in amending a complaint prior to trial." *Bischoff*, 281 Kan. at 205. We decline to find that the district court abused its discretion here and stretched that latitude beyond the boundaries of fairness and reasonability.

II. *The district court did not err when it declined to issue the unanimity instruction Williams requested.*

Williams' second issue consists of a claim that his rape convictions must be overturned because the district court erred when it refused to provide the jury with his requested unanimity instruction. He contends the State presented evidence of several acts that could have sustained convictions for either rape, or its corresponding alternative charge for aggravated indecent liberties with a child. Therefore, the instruction was warranted because different jurors could have relied on different acts to find him guilty. The State counters that the district court properly declined to issue the instruction because Williams' case does not present a multiple acts problem, and to the extent it did, any error attributable to the omission of the instruction was harmless.

By law, an offender is entitled to a unanimous jury verdict, and in Kansas that right is preserved through K.S.A. 22-3421 and K.S.A. 22-3423(1)(d). Accordingly, when the State charges one crime, but provides evidence of several different acts the accused engaged in that arguably substantiate their commission of the offense, the district court is required to give the jury a unanimity instruction or the State must specifically identify for the jury the precise act it is relying on to establish the offender's guilt. *State v. Wells*, 296 Kan. 65, 79, 290 P.3d 590 (2012) ("The purpose of a unanimity instruction is to alleviate the possibility that a defendant will be convicted of a crime without the jury unanimously agreeing on the particular act that constituted the crime.").

Typically, Kansas appellate courts apply a three-step analytical framework when reviewing challenges to jury instructions in criminal cases. First, they consider reviewability, followed by a determination of whether the instruction was legally and factually appropriate. To the extent error is identified in that second step, the final step requires an assessment of whether that error can be deemed harmless. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). But when our task is to analyze the circumstances surrounding the absence of a unanimity instruction in cases that allegedly involve multiple acts, our inquiry is governed by the following more particularized three-part test:

> "'The threshold question . . . , over which the court exercise[s] unlimited review, [is] whether the case truly involve[s] multiple acts, *i.e.*, whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary. . . .
>
> "'The second step [is] a determination of whether an error occurred. If the State did not inform the jury which act to rely upon during its deliberations and the trial court did not instruct the jury that it must be unanimous about the particular criminal act that supported the conviction, there was error. . . .
>
> "'The final step [is] to determine whether the error was reversible.' [Citations omitted.]" *State v. Harris*, 310 Kan. 1026, 1039, 453 P.3d 1172 (2019) (quoting *State v. King*, 297 Kan. 955, 979, 305 P.3d 641 [2013]).

In raising this issue, Williams specifically targets his three rape convictions that were charged in the alternative as aggravated indecent liberties with a child. Although it charged alternative offenses, the unlawful act that the State alleged Williams perpetrated against M.W. was the same for both crimes—sexual intercourse. "'Sexual intercourse'" is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object." K.S.A. 21-5501(a).

For each of the three counts at issue, and their alternative counterparts, the threshold question is whether Williams' conduct "was part of one act or represents multiple acts that are separate and distinct from one another." *King*, 297 Kan. at 981. This is what is known as unitary conduct. 297 Kan. at 981. There is no bright-line rule governing when a case involves multiple acts, but Kansas courts have consistently looked to the following factors to ascertain whether the issue is present in a particular case: (1) did the acts happen at or near the same time; (2) whether the acts occurred at the same location; (3) if the acts share a causal relationship, particularly whether there was an intervening event; and (4) whether a fresh impulse motivated some of the conduct. 297 Kan. at 981; *State v. Allen*, 290 Kan. 540, 544, 232 P.3d 861 (2010).

Williams contends that a unanimity instruction was warranted because there was evidence that the charges at issue arose out of conduct that involved multiple acts from which the jurors might have based their decisions, thereby creating the risk of a less than unanimous verdict. As support for this contention, he directs our attention to M.W.'s testimony that Williams spanked her during the incidents in addition to performing the cavity searches or otherwise subjected her to unlawful sexual touching. Therefore, his argument goes, some members of the jury may have relied on those other instances of sexually charged contact to conclude he was guilty of aggravated indecent liberties with a child.

M.W.'s account of the incidents did not give rise to a multiple acts concern. Again, the touchstone of the inquiry is not merely whether one can point to the fact that other acts were perpetrated against the victim. Rather, those additional acts must bear an independent legal significance in that any one of them *could have supported a conviction* on each respective count. *State v. Moyer*, 306 Kan. 342, 359, 410 P.3d 71 (2017). This is so because to reiterate, the ill to be avoided is a situation that risks compromising an offender's right to a unanimous jury verdict. *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003).

That crucial significance is absent here. As noted above, each of the three rape charges, as well as the three corresponding alternative counts of aggravated indecent liberties with a child alleged the same unlawful act of sexual intercourse, which requires penetration. The other instances of unlawful sexual contact that Williams relies on as the foundation for his claim specifically did not involve penetration. Each will be addressed in turn.

Beginning with the offense that occurred between June 2021 and August 2021, we are not persuaded by Williams' claim that the fact M.W. was spanked and then endured a cavity search is evidence of a multiple acts problem. The record reveals that the cavity search alone provided the foundation for the charged offense. That was the only act that involved penetration, as required to sustain a conviction for either rape or the theory of aggravated indecent liberties with a child charged by the State.

Williams' challenge to the October 2021 offense on these grounds is similarly unavailing. He highlights M.W.'s testimony that revealed Williams touched her breasts, as well as her vagina, under her clothes, and eventually inserted his fingers into her vagina. Again, the State's burden required that it prove, beyond a reasonable doubt, that Williams unlawfully engaged in sexual intercourse with M.W. It is evident from the record that only one of the acts perpetrated by Williams during the October incident provided a factual foundation that supported the crimes charged.

The final incident, for purposes of our discussion here, occurred in December 2021, around Christmastime. Williams seeks to have us focus on M.W.'s testimony that Williams first penetrated her vagina digitally during a cavity search then shortly thereafter, he penetrated her vagina with his penis. While we cannot dispute that two acts of penetration occurred, we note once again that the analysis is more nuanced than merely tallying up the number of inappropriate, sexual touches. The law requires that those incidents must also be factually separate and distinct enough from one another to

16

constitute individualized acts; the unlawful acts cannot be unitary or amount to a single course of conduct. *Moyer*, 306 Kan. at 360. Kansas courts define a single "course of conduct" as actions that are continuous and connected, occurring over a relatively short period of time, in the same place, or to achieve the same objective. *State v. Hilson*, 28 Kan. App. 2d 740, 742, 20 P.3d 94 (2001). When evidence establishes a continuous incident that cannot be factually separated, courts treat it as a single course of conduct rather than multiple acts. 28 Kan. App. 2d at 742 (citing *State v. Staggs*, 27 Kan. App. 2d 865, Syl. ¶ 2, 9 P.3d 601 [2000]). As noted above, a determination of whether this hurdle is cleared requires consideration of whether the acts occurred at or near the same time and in the same location, and whether there was an intervening event or evidence that the conduct was motivated by a fresh impulse. A "fresh impulse" refers to distinct, independent motivation that results in the perpetration of additional conduct, wholly discrete from prior incidents. *State v. Bales*, No. 126,777, 2025 WL 2631179, at *4 (Kan. App. 2025) (unpublished opinion).

The conduct at issue undisputedly occurred in the same location and within a relatively narrow window with no appreciable passage of time between the two instances of penetration. There is also no indication that the second act of penetration was the product of a fresh impulse, and Williams offers no argument that he was prompted by a new inclination at that moment. Arguably, that claim has been abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is deemed waived or abandoned.). Even so, when an impulse is revised before action is taken, a simple change in the criminal plan is all that has occurred, not an intervening motivator. *State v. Hood*, 297 Kan. 388, 392, 300 P.3d 1083 (2013). From this analysis, we have no reservations in concluding that while Williams subjected M.W. to two acts of penetration during this incident, they are properly designated as a single course of conduct, not multiple acts.

Given our conclusion that Williams' case does not involve multiple acts, either because the alleged acts differed from one another by type, as was the case in the first

17

two rape charges or because the conduct was unitary, as in the third count of rape, we need not proceed any further with the analysis. See *State v. Garcia-Martinez*, 318 Kan. 681, 694, 546 P.3d 750 (2024) (When the conduct is unitary, no unanimity instruction is necessary and the analysis ends.) (citing *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 [2007]). Accordingly, we find the district court did not err when it declined to issue the unanimity instruction.

*Impact of Williams' reliance on a unified defense*

We found that the district court did not err in declining to issue a unanimity instruction; and while that conclusion is ultimately bolstered by Williams' use of a unified defense, we nevertheless believe it is important to briefly touch upon that issue.

The concept of a unified defense relates to whether a defendant presents a single, cohesive theory, or general denial, that extends to every offense charged against them in a particular case. *State v. De La Torre*, 300 Kan. 591, 599, 331 P.3d 815 (2014). Their defense is not considered "unified" if the evidence they put on varies to defend against alleged incidents that occurred on different dates. See *State v. King*, 299 Kan. 372, 382, 323 P.3d 1277 (2014). "[I]n one of its purest forms," a unified defense is merely a "credibility contest between the victims and the alleged perpetrator." *Voyles*, 284 Kan. at 253.

An offender's use of a unified defense can be "an important and compelling factor in firmly convincing the reviewing court that the jury would have reached a different verdict had the instruction error not occurred." *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013). "'Kansas appellate courts have held [that] a "failure to instruct" in multiple acts cases [is] reversible error except when the defendant presents a unified defense, *e.g.*, a general denial.'" *De La Torre*, 300 Kan. at 599 (quoting *Voyles*, 284 Kan. at 253).

The record before us reflects that Williams generally denied any wrongdoing in this case and thus presented a unified defense. Williams encourages us to find that his defense was actually a "'general denial plus more.'" He first contends this is a valid consideration because during trial he offered a possible explanation for M.W.'s allegations—she did not want to move to Arkansas. But that does not constitute a defense to any of the four charges pending against him. Rather, it is simply a means by which to cast doubt on M.W.'s credibility. Williams next asserts he relied on more than a general denial given that he admitted to spanking M.W. for disciplinary reasons and suggests that this "offered an innocuous explanation for his conduct." But his motivation in doling out such punishment is largely irrelevant because the State did not charge Williams with crimes related to spanking. Again, the information Williams highlights for our consideration belongs in the credibility column; it does not offer a defense to the crimes charged.

In sum, the district court did not err in declining to give a unanimity instruction because there were not multiple acts alleged. A unanimity instruction also was not warranted under the facts of this case because Williams presented a unified defense.

Having concluded that the district court did not err in allowing the State to amend the complaint or in denying Williams' request for a unanimity instruction, we affirm his convictions.

Affirmed.