No. 99,014

STATE OF KANSAS, *Appellee*, v. DAMON LARON ALLEN, *Appellant*.

(232 P.3d 861)

Opinion filed June 4, 2010.

*Michelle Davis*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Don L. Scott*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Damon Laron Allen appeals from his conviction of one count of possession of cocaine with intent to sell, in violation of K.S.A. 2006 Supp. 65-4161(a). The Court of Appeals affirmed his conviction, and this court granted review of one of the two issues raised before the Court of Appeals.

In response to an anonymous telephone tip, police officers went to a house in Liberal, Kansas, to serve a felony arrest warrant on Allen at about 10 p.m. on August 16, 2006. They were met at the door by Pablo Cardenas, who owned the house. Cardenas gave the police permission to search the house for Allen.

Officers began the search outside a small, uncluttered bedroom on the ground floor of the northwest corner of the house. Using a flashlight and looking into the room from the doorway, the officers saw no one in the room. The officers then left the house in order

to send in a search dog. One of them called out to Allen that he should leave the house.

The officers saw Allen emerge from the northwest corner bedroom. They searched him and found a plastic baggy containing an off-white rock substance in one of Allen's pants pockets. A further search disclosed two additional rocks loose in the same pocket.

Officers then searched the bedroom from which Allen had emerged. They discovered a stairway leading from the bedroom to another bedroom on the second floor. They searched the upstairs bedroom and found a plastic bag containing 21 rocks of crack cocaine. Cardenas told the police that the upstairs bedroom belonged to him and his wife, but that Allen had been staying there for several days.

When the police interviewed Cardenas, he gave a statement suggesting that Allen was selling cocaine to Cardenas and others out of the house. He promised that he would testify against Allen, and the police and the district attorney agreed not to file charges against Cardenas.

The State charged Allen with one count of possession of cocaine with intent to sell in violation of K.S.A. 2006 Supp. 65-4161(a) and one count of possession of cocaine in violation of K.S.A. 2006 Supp. 65-4160. A jury found him guilty of the charge of possession of cocaine with intent to sell, and he was sentenced to an aggravated term of 51 months. Allen filed a timely notice of appeal.

Allen raised two issues before the Court of Appeals: Did the district court err in failing to give a unanimity instruction, and did the district court err in failing to instruct the jury to consider with caution the testimony of an admitted accomplice? The Court of Appeals affirmed the conviction in *State v. Allen*, case No. 99,014, unpublished opinion filed January 23, 2009. This court granted review with respect to the first issue only.

The State did not specify which cocaine—that in Allen's pocket, or that in the upstairs bedroom—served as the basis for the possession element of possession with intent to sell. In closing argument, the State urged the jury to find that the cocaine in the bedroom belonged to Allen. The State also asked the jury to find that the cocaine in Allen's pocket belonged to Allen. The State told the

jury, "But if you take those three rocks [in the pocket], plus all the 21 rocks upstairs, we believe the evidence is overwhelming that this defendant possessed it and intended to sell each of those rocks to somebody else." Allen presented no testimony, but he argued to the jury that it could reasonably conclude that the cocaine in the bedroom belonged to Cardenas and not to Allen. Allen did not object to the instructions as given.

The question presented on review is whether possessing the cocaine in the bedroom and possessing the cocaine in the pocket were multiple acts requiring jury unanimity as to at least one of those acts, or whether possessing cocaine in different parts of the house at the time of arrest were part of a single crime of possession with intent to sell.

We begin our inquiry by observing the established standards for reviewing a determination of whether conduct constitutes multiple acts:

"When jury unanimity is at issue, the threshold question is whether an appellate court is presented with a multiple acts case. This determination is a question of law over which an appellate court exercises unlimited review.

"When jury unanimity is at issue in what has been determined to be a multiple acts case, the second question is whether error was committed. In a multiple acts case, either the State must inform the jury which act to rely upon in its deliberations or the court must instruct the jury to agree on the specific criminal act. The failure to elect or instruct is error.

"When in a multiple acts case the State does not inform the jury which act to rely on in its deliberations and the trial court fails to instruct the jury to agree on a specific criminal act, the third question is whether that error warrants reversal." *State v. Voyles*, 284 Kan. 239, Syl. ¶¶ 1-3, 160 P.3d 794 (2007).

In multiple acts cases, several acts are alleged and any one of them could constitute the crime charged. *State v. Kesselring*, 279 Kan. 671, 682, 112 P.3d 175 (2005). In conducting a multiple acts analysis, the threshold question is whether the defendant's conduct is part of one act or represents multiple acts that are separate and distinct from each other. *Voyles*, 284 Kan. at 244. We must therefore determine whether possessing the cocaine in Allen's pocket was a separate and distinct act from possessing the cocaine in the bedroom for purposes of possessing with intent to sell. A series of

cases discussing multiple acts provides guidance in deciding the issue.

In *State v. Kinmon*, 26 Kan. App. 2d 677, 995 P.2d 876 (1999), *abrogated on other grounds by State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001), *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 160 P.3d 794 (2007), the Court of Appeals considered facts closely resembling those in the present case. Cocaine was found in the defendant's pocket and under a couch. The jury convicted the defendant of possession of cocaine. On appeal, he argued that it was reversible error for the court to fail to instruct the jury that it must agree on the specific act constituting the crime. The Court of Appeals found that the appeal involved a multiple acts case in which several acts are alleged and any one act could support the crime charged. The court reversed and remanded for a new trial, finding:

"The jury could have found Kinmon guilty based on either possession of the cigarette case or possession of the key holder. There was no instruction informing the jurors that all of them had to agree that the same underlying criminal act had to be proved beyond a reasonable doubt. In voting to convict Kinmon, different jurors could have relied on different acts. Kinmon did not request the appropriate instruction, but the language in *Timley* [, 255 Kan. 286, 875 P.2d 242 (1994),] makes clear that this is clear error and the conviction cannot stand when there is no assurance that the verdict was unanimous." 26 Kan. App. 2d at 678-79.

We have enunciated a test for determining whether separate incidents underlie a criminal charge:

"Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by 'a fresh impulse.'" 271 Kan. at 939.

Although this court abrogated *Hill* on other grounds in *Voyles*, 284 Kan. 239, Syl. ¶ 3, our appellate courts have continued to apply the "fresh impulse" analysis in a long line of subsequent cases. See, *e.g.*, *State v. Thompson*, 287 Kan. 238, 245, 200 P.3d 22 (2009); *State v. Stevens*, 285 Kan. 307, 314, 172 P.3d 570 (2007); *State v. Rivera*, 42 Kan. App. 2d 1005, 1014-17, 219 P.3d 1231 (2009); *State*

*v. Baatrup*, 40 Kan. App. 2d 467, 472, 193 P.3d 472 (2008); *State v. Pritchard*, 39 Kan. App. 2d 746, 754, 184 P.3d 951, *rev. denied* 286 Kan. 1184 (2008).

In *State v. Schoonover*, 281 Kan. 453, 507, 133 P.3d 48 (2006), we noted additional factors that could determine whether criminal acts constitute unitary conduct: "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct."

In the present case, the Court of Appeals decided that *Kinmon* was superceded by *Kesselring* and was no longer good law. The court then found that this case does not involve multiple acts under the *Kesselring* analysis:

"Under the *Kesselring* test, Allen's charge appears to us to have arisen from one course of conduct and not multiple acts. All of the cocaine, whether on Allen's person or in the upstairs bedroom, was found in the same house and on the same occasion. There was no evidence presented to suggest any intervening event or fresh impulse that would have led Allen to possess one batch of cocaine and not the other. See *State v. Fisher*, 283 Kan. 272, 312-13, 154 P.3d 455 (2007)." *Allen,* slip op. at 4.

This conclusion by the Court of Appeals is incorrect. There is no single test for whether conduct constitutes one act or separate and distinct multiple acts. A test that applies to kidnapping may not apply to possessing a controlled substance. It makes little sense in some contexts to speak of a "fresh impulse," especially when part of the alleged criminal conduct consists of several ongoing actions. The critical issue is unanimity of the verdict. In a criminal case, Kansas statutorily requires jury unanimity on guilt. *State v. Wright*, 290 Kan. 194, Syl. ¶ 1, 224 P.3d 1159 (2010); see K.S.A. 22-3421.

The unanimity problem may be illustrated by considering some different possibilities for how the jury reached its conclusion, all supported by the testimony presented at trial.

All 12 jurors may have agreed that Allen owned the cocaine in the bedroom and intended to sell it. This situation presents no unanimity problem.

All 12 jurors may have agreed that Allen owned only the cocaine in his pocket and intended to sell it. This situation also presents no unanimity problem.

Ten of the jurors may have believed Allen owned the cocaine in both his pocket and the bedroom and intended to sell all of it. One juror may have believed Allen owned the cocaine in his pocket but did not intend to sell it and also have believed he owned the cocaine in the bedroom and intended to sell it. And one juror may have believed he did not own the cocaine in the bedroom but he owned and intended to sell the cocaine in his pocket. This scenario presents a unanimity problem: the jurors did not agree on the possession element of the possession with intent to sell.

We do not, of course, know what motivated specific individual jurors to reach a guilty verdict. They may have been unanimous in their factual conclusion, but they may not have been. That was the problem that the court addressed in *Kinmon*, and the *Kinmon* analysis remains applicable to a situation such as Allen's, in which a jury could find either, or both, actual or constructive possession.

Having determined that the acts were sufficiently separate and distinct to warrant instruction on separate theories, we must decide whether the failure to give such instructions constituted reversible error. When a unanimity instruction was not requested or given and the defendant presented no general denial, an appellate court may conclude that the failure to instruct the jury to agree on a specific criminal act warrants reversal under the clearly erroneous standard. If the defendant made a general denial, the "error may be reversible when the trial is not merely a credibility contest between the victim and the defendant, *e.g.*, due to inconsistent testimony from the victim." *Voyles*, 284 Kan. 239, Syl. ¶ 5.

Instructions are clearly erroneous if the reviewing court is firmly convinced that there is a real possibility that the jury would have rendered a different verdict if the trial error had not occurred. *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007). As we set out in the scenarios above, it is certainly plausible that jurors would not have agreed on the element of possession that underlay the intent to sell.

We therefore reverse the Court of Appeals decision affirming the conviction, and we reverse the conviction. The case is remanded to the district court.