NOT DESIGNATED FOR PUBLICATION

No. 120,039

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HECTOR ANTONIO RODRIGUEZ-MANJIVAR,
*Appellant.*

MEMORANDUM OPINION

Appeal from Meade District Court; SIDNEY R. THOMAS, judge. Opinion filed October 11, 2019. Affirmed.

*Derek W. Miller*, of Miller & French, LLC, of Liberal, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM:  Hector Antonio Rodriguez-Manjivar appeals his conviction of one count of aggravated indecent liberties with a child. He argues the State did not present sufficient evidence to support his conviction; the district court erred by failing to give a multiple acts instruction; and the court erred by admitting evidence of prior sexual misconduct. We disagree and affirm.

FACTS

In April 2017, H.Z. was 13 years old and living in an apartment with her sister, M.S., and her brother-in-law, B.C., who were friends with Rodriguez-Manjivar. H.Z. knew Rodriguez-Manjivar and his family, including his wife, kids, and his mother-in-law, A.A. H.Z. had gone to Rodriguez-Manjivar's house to eat dinner and spend time with his family.

On April 1, 2017, A.A. was moving into an apartment above H.Z.'s apartment. H.Z. saw A.A. moving boxes and asked M.S. if she could help A.A. move. M.S. agreed. When H.Z. got up to A.A.'s apartment, A.A. and Rodriguez-Manjivar were there. H.Z. asked if she could help them, and A.A. agreed.

Rodriguez-Manjivar asked H.Z. to help him put a bedframe together in the bedroom. A.A. left the apartment to get something from the car. As H.Z. and Rodriguez-Manjivar were assembling the bedframe, he stood behind her. He began rubbing his hands on her body, grabbing her butt, and "squishing" her breasts. H.Z. told him to stop but he did not. She struggled to get away from Rodriguez-Manjivar, and he eventually let go.

H.Z. left the bedroom, but Rodriguez-Manjivar followed her, "staring at [her] in a nasty way." As she walked into the kitchen, Rodriguez-Manjivar began moaning and making "sexual noises." He asked H.Z. if she shaved her vagina. He grabbed her again, rubbing her body with his hands and touching her breasts. He slid his hands into her pants and tried to digitally penetrate her. H.Z. pushed him away. She then went into the bedroom and locked the door.

2

Within five minutes, H.Z. heard Rodriguez-Manjivar's wife come into the kitchen. H.Z. left the bedroom and told Rodriguez-Manjivar's wife what had just happened, but his wife did not believe her. Rodriguez-Manjivar then told H.Z. to go get him some water. H.Z. ran downstairs to her apartment.

H.Z. was crying and told M.S. she had been left alone in the apartment with Rodriguez-Manjivar. He had touched her and asked her if she shaved "on that part." M.S. saw marks on H.Z.'s arms and chest.

Rodriguez-Manjivar came downstairs after H.Z. He knocked on the door, but H.Z. told M.S. not to let him in because she was scared. About 10 minutes later, Rodriguez-Manjivar's wife came downstairs. She asked M.S. to open the door, explaining that Rodriguez-Manjivar "didn't do it on purpose." When M.S. did not answer the door, Rodriguez-Manjivar's wife sent her a text message saying: "Hector didn't do it on purpose. It was an accident. He just wanted to say sorry." Rodriguez-Manjivar also called B.C. to tell him he had accidentally touched H.Z. during the move.

H.Z. and her family discussed what to do. They decided to tell their priest what happened. The next day, they went to see their priest, and they all decided to call law enforcement. Sheriff's Deputy Jason Miller responded to the call. H.Z. told Miller that Rodriguez-Manjivar had touched her breasts, buttocks, and vaginal area while they were putting a bed together in A.A.'s apartment. She said Rodriguez-Manjivar "put his hands [on her forearms] from behind her, and then squeezed in on her sides with his arms."

Miller noticed H.Z. had a few light bruises on her forearms, and he believed those bruises were consistent with her version of events. He asked if she had any other bruises or injuries. She said "she was pretty sure she had some bruising on the sides of her body and under her breast area." Miller then contacted a female officer to take pictures of

3

H.Z.'s injuries. Those pictures showed H.Z. had bruises on her arms and back and around her breasts and waist. She also had scratches around her waist.

Miller later spoke with Rodriguez-Manjivar. He said he and H.Z. were alone in the bedroom putting the bed together. H.Z. was helping him hold the headboard up so he could put screws in. She was distracted by a pair of handcuffs on the headboard, and the headboard started to fall. Rodriguez-Manjivar accidentally brushed her waist area as he moved to catch the headboard. H.Z. said something like, "[D]on't touch me, stop." Rodriguez-Manjivar then went to the kitchen, and his wife arrived. H.Z. told his wife that Rodriguez-Manjivar had touched her inappropriately.

A few days after the incident, H.Z. submitted to a forensic interview. She said she had been helping A.A. move and Rodriguez-Manjivar had grabbed her. He squeezed her vagina and her breast. He followed her from the bedroom to the kitchen before she eventually locked herself in the bedroom.

The State charged Rodriguez-Manjivar with one count of aggravated indecent liberties with a child. Because Rodriguez-Manjivar was more than 18 years old and H.Z. was less than 14 years old at the time of the crime, the State charged the offense as an off-grid felony.

At trial, H.Z., M.S., Miller and several other witnesses testified for the State while Rodriguez-Manjivar called his wife and A.A. to testify in his defense. A.A. testified she had propped open the bedroom door and she saw H.Z. and Rodriguez-Manjivar putting the bed together. H.Z. was playing with the handcuffs on the headboard and caused it to fall down. Rodriguez-Manjivar had to keep the headboard from falling on her. A.A. then left the apartment for seven or eight minutes to get a part for the bed that she had forgotten. When she returned, Rodriguez-Manjivar and his wife were in the apartment, but H.Z. had left. A.A. added that the doors in her apartment did not have locks.

4

Rodriguez-Manjivar's wife testified that when she arrived, the apartment's front door was open. She saw H.Z. in one of the bedrooms playing with some things on a dresser. H.Z. did not appear to be upset. H.Z. told Rodriguez-Manjivar's wife that Rodriguez-Manjivar had touched her inappropriately. After H.Z. left the apartment, Rodriguez-Manjivar's wife asked him about it and told him he should apologize if he did it. They went down to H.Z.'s apartment, but no one answered the door.

The jury convicted Rodriguez-Manjivar of aggravated indecent liberties with a child. The district court granted his request for a durational departure and sentenced him to 155 months' imprisonment. Rodriguez-Manjivar appeals.

*Sufficiency of the Evidence*

On appeal, Rodriguez-Manjivar argues the State did not present sufficient evidence to support his conviction for aggravated indecent liberties with a child. He claims the State's case rested mainly on the testimony of H.Z., a young child. He also asserts the State did not prove he lewdly touched H.Z. or that he touched H.Z. with the intent to arouse or satisfy sexual desires.

When a criminal defendant challenges the sufficiency of the evidence supporting a conviction, the standard of review is whether, after reviewing all the evidence in a light most favorable to the State, this court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In performing this review, this court does not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

The State charged Rodriguez-Manjivar with aggravated indecent liberties with a child under K.S.A. 2017 Supp. 21-5506(b)(3). As laid out in the jury instructions, the State had to prove (1) Rodriguez-Manjivar lewdly fondled or touched H.Z.; (2) he did so with the intent to satisfy his sexual desires, H.Z.'s sexual desires, or both; and (3) H.Z. was less than 14 years old. See K.S.A. 2017 Supp. 21-5506(b)(3)(A). "In considering if a touch is lewd, a factfinder . . . should consider whether the touch 'tends to undermine the morals of a child [and] is so clearly offensive as to outrage the moral senses of a reasonable person.'" *State v. Reed*, 300 Kan. 494, 500-01, 332 P.3d 172 (2014).

Rodriguez-Manjivar argues his conviction is unsupported by the evidence because the State's case relied mainly on the testimony of a minor. This appears to be an attack on H.Z.'s credibility. Witness credibility is a question for the jury, not this court. Additionally, two officers observed physical injuries on H.Z. consistent with her version of events. Several witnesses testified Rodriguez-Manjivar was left alone in the apartment with H.Z. Rodriguez-Manjivar admitted to several people that he had touched H.Z. inappropriately, although he claimed it was an accident. Thus, this argument fails.

Rodriguez-Manjivar next asserts the State presented insufficient evidence to prove he lewdly touched or fondled H.Z. or that he did so with the intent to arouse or satisfy sexual desires. He does not provide any argument on this point beyond a few conclusory sentences, so he has abandoned this argument. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Nevertheless, the State presented sufficient evidence of both these elements.

According to H.Z., Rodriguez-Manjivar grabbed her breasts and buttocks. He also slid his hands down her pants and tried to digitally penetrate her. Looking at this evidence in a light most favorable to the State, a rational fact-finder could conclude Rodriguez-Manjivar touched H.Z. in way that "'undermine[d] the morals of a child [and] is so clearly

6

offensive as to outrage the moral sense of a reasonable person.'" *Reed*, 300 Kan. at 500-01.

Similarly, the evidence supports a finding that Rodriguez-Manjivar touched H.Z. with the intent to satisfy or arouse his sexual desires, her sexual desires, or both. The State may prove sexual intent through circumstantial evidence. 300 Kan. at 502. In addition to touching H.Z. on her breasts, buttocks, and genitals, Rodriguez-Manjivar also made sexual moaning sounds and asked H.Z. if she shaved her pubic hair. From this evidence, a rational fact-finder could conclude Rodriguez-Manjivar touched H.Z. with the requisite intent.

*Unanimity Jury Instruction*

Next, Rodriguez-Manjivar argues the district court erred in failing to give a unanimity instruction. He claims the jury heard evidence of three separate acts that could have supported his conviction: the two touchings that occurred on April 1, 2017, and a touching that occurred sometime before April 1. The State responds it relied only on the April 1 incident in prosecuting the case, and the touchings on that day constituted a single act.

A criminal defendant is entitled to a unanimous jury verdict under Kansas law. K.S.A. 22-3421; *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). When a case involves multiple acts, any one of which could constitute the crime charged, the jury must be unanimous in finding which specific act constitutes the crime. *State v. King*, 297 Kan. 955, 977-78, 305 P.3d 641 (2013). To ensure unanimity in these cases, the State must elect which act it is relying upon for the charge or the district court must instruct the jury that it must unanimously agree on the specific act constituting the crime charged. *King*, 297 Kan. at 978.

7

In *State v. De La Torre*, 300 Kan. 591, 596, 331 P.3d 815 (2014), the Kansas Supreme Court has identified a three-part procedure for reviewing unanimity instruction errors. First, the reviewing court determines whether the case involves multiple acts. If so, the court then determines whether error was committed. An error is committed when the State fails to inform the jury which act to rely on or the district court fails to give a unanimity instruction. Finally, the court determines whether the error was harmless using the appropriate standard.

In the first step, we must decide whether this is a multiple acts case, which is a question of law subject to unlimited review. *King*, 297 Kan. at 981. This analysis requires us to decide whether the defendant's conduct constitutes one course of conduct or represents multiple acts that are separate and distinct from each other. No single test exists to make this determination. Instead, courts must look to the facts and the State's theory of the crime to decide whether a jury verdict implicates unanimity issues. *State v. A.A.*, 290 Kan. 540, Syl. ¶¶ 1-2, 232 P.3d 861 (2010). Kansas courts have used these factors to determine if multiple acts exist: (1) whether the acts occurred in the same place; (2) whether the acts occurred at or near the same time; (3) whether there was a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there was a fresh impulse motivating some of the conduct. *State v. Schoonover*, 281 Kan. 453, 507, 133 P.3d 48 (2006).

Rodriguez-Manjivar alleges the jury heard evidence of three separate acts. He claims his conduct on April 1, 2017, constitutes two acts. He also points to evidence that he had touched H.Z. before the April 1 incident. Specifically, during cross-examination, defense counsel asked H.Z., "Had [Rodriguez-Manjivar] ever touched you anywhere on you before April 1st?" and H.Z. responded affirmatively. He then asked, "Where had [Rodriguez-Manjivar] touched you?" and she responded, "My legs when we were eating dinner. Like, he would, like, play with my leg, like, my feet and stuff."

The State did not present evidence of possible criminal conduct occurring before April 1, 2017. And the State did not argue this conduct was criminal. The State also made clear in opening statement and closing argument that it was relying on the April 1 incident. The real issue here is whether Rodriguez-Manjivar's conduct on April 1, 2017, constitutes one or two acts.

The problem in completing the first step of this analysis is some of the relevant facts are unclear. The acts here most likely can be considered to have occurred in the same place. While each touching occurred in a different room, those rooms were in the same apartment. See *State v. Ultreras*, 296 Kan. 828, 856, 295 P.3d 1020 (2013) (holding aggravated battery which began inside a bar and ended outside the bar occurred in the same location). But see *State v. Long*, 26 Kan. App. 2d 644, 650, 993 P.2d 1237 (1999) (holding defendant's multiple convictions for sodomy and rape were not multiplicitous because the acts occurred over a one- to two-hour time span in different locations in victim's apartment).

As for whether the acts occurred at the same time, the evidence at trial was conflicting. H.Z. did not testify about the amount of time between the touching in the bedroom and the touching in the kitchen, though she did testify that the whole incident took 30 to 40 minutes. M.S. testified H.Z. was in A.A.'s apartment for about 30 minutes. A.A. testified that she was away from the apartment for only seven to eight minutes. Rodriguez-Manjivar's wife also estimated A.A. would only have been gone from the apartment for seven to eight minutes. Thus, both the time span of the whole incident and the time period between each touching is unclear.

Likewise, the record is unclear about whether there was an intervening event. According to H.Z.'s testimony at trial, Rodriguez-Manjivar followed her from the bedroom to the kitchen. But the forensic interviewer testified H.Z. said she had helped Rodriguez-Manjivar assemble a second bed after he touched her in the bedroom.

9

The State relies on *State v. Kesselring*, 279 Kan. 671, 112 P.3d 175 (2005), and *State v. Hilson*, 28 Kan. App. 2d 740, 20 P.3d 94 (2001), to support its argument that Rodriguez-Manjivar's acts are one course of conduct. In *Kesselring*, the Kansas Supreme Court found no jury unanimity issue existed regarding the defendant's kidnapping conviction:

"In this case, although the events transpired over a longer period of time, there were no breaks in the sequence of events sufficient to establish separate criminal acts. The crime of kidnapping, as compared to the crime of battery . . . may occur over a longer period of time. Yet a kidnapping over several hours or days could not be broken into several crimes. Under the facts of this case, the length of time involved does not prevent a finding of a continuous incident. Furthermore, the moving of a kidnapping victim from one location to a car and from the car to another location does not constitute separate acts. Similarly, the fact that [the victim] was momentarily free when he attempted to escape was not a sufficient interruption to say that a new criminal impulse or new act of kidnapping had occurred. The evidence was that the interruption was not appreciable." 279 Kan. at 683.

In *Hilson*, the Court of Appeals held that the defendant's two threats did not constitute multiple acts of criminal threat. 28 Kan. App. 2d at 743. The court reasoned the threats took place over approximately 30 minutes, a relatively short period of time. Also, the threats were made to the same victim with the same objective. Based on this, the court concluded the defendant's conduct was continuous, and the jury delivered a unanimous verdict. 28 Kan. App. 2d at 743.

The State does not explain how *Kesselring* and *Hilson* relate to this case. These cases do support an argument that multiple criminal acts within a certain time frame without a significant interruption may be considered a continuous course of conduct. But no single test exists to determine whether one act or separate and distinct multiple acts

10

have occurred, and "[a] test that applies to kidnapping may not apply to possessing a controlled substance." *A.A.*, 290 Kan. at 544. For example, in *State v. Foster*, 290 Kan. 696, 714-15, 233 P.3d 265 (2010), the Kansas Supreme Court held that several threats over one hour was a continuing course of conduct but two rapes over the same period were separate and distinct acts. So neither *Kesselring* nor *Hilson* is dispositive.

If Rodriguez-Manjivar immediately followed H.Z. out of the bedroom and into the kitchen, the acts in this case are most likely one course of conduct. But if the two acts were spread out over 30 to 40 minutes with a break to assemble a second bed, the acts in this case are more likely to be separate and distinct acts. Ultimately, though, it may be unnecessary to determine whether this is a multiple acts case because any error was harmless.

If this case presents a multiple acts case, error occurred because the State did not elect one of the acts and the district court did not give an instruction. Because Rodriguez-Manjivar did not request an instruction, we must review for clear error. See *King*, 297 Kan. at 978, 980. This requires Rodriguez-Manjivar to firmly convince us the jury would have reached a different verdict if the district court had given a unanimity instruction. See *State v. Cooper*, 303 Kan. 764, 770, 366 P.3d 232 (2016).

Failing to give a unanimity instruction is generally reversible error "except when the defendant presents a unified defense, *e.g.*, a general denial." *State v. Voyles*, 284 Kan. 239, 253, 160 P.3d 794 (2007). "[I]n one of its purest forms," a unified defense is "a mere credibility contest between the victim and the alleged perpetrator." 284 Kan. at 253.

In his brief, Rodriguez-Manjivar does not discuss the nature of his defense, and the exact nature of his defense is not entirely clear from the record. The State introduced evidence that Rodriguez-Manjivar admitted to touching H.Z. inappropriately but claimed it was an accident. Rodriguez-Manjivar also presented testimony from A.A. that he had to

11

stop the headboard from falling on H.Z., which would corroborate his statement to Miller. But in closing argument, defense counsel focused on attacking H.Z.'s credibility. He did not argue that the touchings happened but were an accident.

That said, a review of the record does show that the trial was essentially a credibility contest between H.Z. and Rodriguez-Manjivar. H.Z. provided detailed testimony about the April 1 incident at trial. Her testimony was generally consistent, and Rodriguez-Manjivar does not suggest there were any inconsistences.

Moreover, Rodriguez-Manjivar's case is distinguishable from cases like *Voyles*, 284 Kan. 239, in which the Kansas Supreme Court reversed the defendant's convictions for aggravated indecent solicitation of child and aggravated criminal sodomy. In that case, the jury heard evidence of acts involving two victims occurring in different locations on different days. The court noted that "potentially 20 different acts or offenses could have been committed" but the State only charged the defendant with 8 counts. 284 Kan. at 254. Additionally, there were discrepancies and inconsistencies in the witnesses' testimonies.

The danger in cases like *Voyles* is a mixed verdict in which the jury convicts on a charge even though it did not unanimously agree on the occurrence of any one act supporting that charge. But a mixed verdict was much less likely here. Only one victim testified about two touchings occurring in the same apartment within 40 minutes at most. H.Z.'s testimony was generally consistent. Rodriguez-Manjivar has not explained how some of the jurors could have believed the touching in the bedroom occurred but the one in the kitchen did not, while other jurors could have believed the touching in the kitchen occurred but the one in the bedroom did not. As a result, he has failed to show the jury would have reached a different verdict if the district court had given a unanimity instruction.

12

*Prior Crimes Evidence*

For his final issue, Rodriguez-Manjivar argues the district court erred in admitting prior crimes evidence. He points out that H.Z. testified Rodriguez-Manjivar had touched her under the table when she ate dinner at his house before the April 1 incident. He asserts the district court erred in admitting this evidence because the State did not file a pretrial motion for its admission.

Assuming, without deciding, that H.Z.'s testimony did constitute evidence of prior bad acts, Rodriguez-Manjivar invited any error. Despite his claim that the State introduced this evidence, Rodriguez-Manjivar is actually the one who elicited this testimony from H.Z. A litigant may not invite error and then complain of the error on appeal. *State v. Lowery*, 308 Kan. 1183, Syl. ¶ 8, 427 P.3d 865 (2018); see also *State v. Anthony*, 282 Kan. 201, 215, 145 P.3d 1 (2006) (holding invited error doctrine prevented defendant from complaining about admission of prior crimes evidence without limiting instruction when defendant elicited the evidence). Because Rodriguez-Manjivar elicited the testimony he now complains about, the invited error doctrine bars him from complaining about its admission on appeal.

But even if Rodriguez-Manjivar had not invited this error, it would not require reversal of his conviction. Again assuming this was prior crimes evidence, evidence of a defendant's other sexual misconduct is admissible under K.S.A. 2017 Supp. 60-455(d). Prior misconduct involving the same victim and conduct of the same character is unlikely to lead to an improper jury verdict. See *State v. Dern*, 303 Kan. 384, 395, 362 P.3d 566 (2015) (finding defendant's admission to sexual misconduct unlikely to lead to improper jury verdict because misconduct involved same victim and conduct of same character).

Affirmed.

13