NOT DESIGNATED FOR PUBLICATION

No. 126,713

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TOMMY LEE YARDLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; REBECCA J. FAUROT, judge. Submitted without oral argument. Opinion filed February 14, 2025. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Isaac LeBlanc*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: A jury convicted Tommy Lee Yardley of felony theft of property that was worth at least $25,000, but less than $100,000. The property consisted of a truck and trailer containing tools. On appeal, Yardley argues the district court erred by not instructing the jury to be unanimous about which items were stolen. Yardley contends this is a multiple acts case because multiple items were stolen. But this case does not present a multiple acts issue because Yardley committed one action of theft. That is, Yardley stole all the items at once. And even if we agreed that his case should be treated as a multiple acts case, Yardley failed to show how he was prejudiced by the absence of

1

this instruction when considering all the instructions that were given. We therefore affirm Yardley's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Duane Neal Warfield, the victim in this case, left his 1995 Chevy pickup truck and white fifth wheel trailer with his tools on the side of the road after he got pulled over and arrested. Once in jail, Warfield contacted Yardley and told Yardley to retrieve Warfield's truck and trailer and meet up with Warfield's brother so he could park them in a locked facility. Yardley instead took the truck and trailer to a different lot than instructed by Warfield and never met up with Warfield's brother.

The State charged Yardley with one count of felony theft, a level 7 nonperson felony, under K.S.A. 2022 Supp. 21-5801(a)(1), (b)(2). More specifically, the State charged Yardley with unlawfully, feloniously, and intentionally obtaining or exerting unauthorized control over property or services of the victim's motor vehicle and tool trailer containing trade tools with the intent to permanently deprive the owner of the property valued at least of $25,000 but less than $100,000.

The district court held a two-day jury trial at which the State presented testimony from five witnesses. The jury heard testimony from a store manager who testified about surveillance footage cataloging Yardley's actions, an investigating officer, Warfield, Warfield's brother, and a police lieutenant investigating the case.

Warfield testified at trial that he owned D & C Mobile Enterprises, LLC. His business provided emergency, after-hour roadside services. Warfield's business was a vendor for Freightliner and U-Haul, and he serviced their equipment for their customers within a 110-mile radius of Garden City. He used his truck, trailer, and tools to operate his business.

2

Warfield testified that on the morning of August 20, 2022, his truck and trailer were left on the side of the road after he was pulled over and taken to the Finney County Jail. Once at the jail, Warfield contacted Yardley for help with his truck and trailer. He asked Yardley to "[g]et the keys, get the truck, get ahold of [his] brother, and get the truck." Warfield reached out to Yardley because he "trusted the man," and he "treated him better than family."

Warfield's brother testified that once he reached Yardley, he told him that he would help Yardley get the keys to the truck. The next day, Yardley contacted Warfield's brother asking him if he had seen the truck or if he had it towed, but Warfield's brother denied that he had.

Officer Jared Cooper, the investigating officer, testified about his involvement in the case. Warfield's brother contacted the sheriff's office trying to locate Warfield's vehicle. Officer Cooper testified that his investigation revealed that Yardley ended up taking Warfield's truck off the highway and then to EB Tires. Yardley met two other people who helped him, one being Jeremy Hoyt.

Officer Cooper also testified about the surveillance footage from EB Tires, which showed Yardley leaving with Warfield's truck and trailer. Lieutenant Mariano Muniz testified that he assisted Officer Cooper in identifying Yardley in the surveillance video. Lieutenant Muniz confirmed that Yardley brought the truck to Hoyt's residence.

Yardley first told the police he went to get the truck the morning of August 21 but discovered it was missing. Later, Yardley changed his statement to the police and admitted that he had driven the truck to Hoyt's property on August 20.

Warfield's truck, trailer, and tools were not returned to him, and Yardley never explained what happened to Warfield. Law enforcement discovered Warfield's truck was scrapped and sold for pieces.

Warfield testified that in his truck and trailer he had air tools, tire tools, software for computers, and other tools. In his estimation, the tire tools cost about $5,000. Among the other tools was an Omni scanner, which was worth about $1,000. Warfield testified that he had "so much equipment that you can't remember every little thing." Warfield also had $11,500 in cash from operating the business in his truck. He also kept vehicle titles for motorcycles in his truck. Officer Cooper estimated that Warfield's property was worth at least $25,000. Warfield estimated that the total loss of property amounted to $132,000.

After the State and the defense rested, but before closing statements, the district court reviewed the jury instructions with the parties. Yardley did not offer any objections to the final jury instructions. The jury was given two instructions regarding felony theft. One instruction told the jury that to find Yardley committed a severity level 7 felony theft, the State must prove: (1) Warfield owned the property, (2) Yardley exerted unauthorized control over the property, (3) Yardley intended to deprive Warfield permanently of the use or benefit of the property, (4) the value of the property was at least $25,000 but less than $100,000, and (5) the act occurred on or about August 20, 2022, in Finney County, Kansas.

Because the charge also included a lesser offense instruction, the other instruction told the jury:

"You may find the defendant guilty of
- theft where the value of the property was at least $25,000, but less than $100,000,
- theft where the value of the property was at least $1,500 but less than $25,000,
- or

4

■ not guilty.

"When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only, provided the lesser offense has been proven beyond a reasonable doubt."

The State also did not direct the jury to find what items were stolen; the State told the jury:

"The value of the property was at least $25,000, up to $100,000. The evidence showed that the value of the property was at least $25,000 through the testimony of Duane Warfield, Donald Warfield, and Officer Jared Cooper.

"When you get to your jury instructions, look at instruction 11. You as a juror have a right to use common knowledge and experience in regard to the matter about which a witness has testified. Duane Warfield ran a company out of that truck named D & C Enterprises. This was his livelihood. He had his tools in there. He had air tools, he had tire tools, he had spare parts, he had truck parts, he had software. And his testimony showed that there was approximately $11,000—$11,500 in cash. He ran this business out of that truck and trailer. He had that business for about five years and accumulated tools and parts over time. This shows that the value was at least $25,000."

The district court also told the jury, "Your verdict must be founded entirely upon the evidence admitted and the law as given in the instructions. Your agreement upon the verdict must be unanimous."

The jury ultimately convicted Yardley of felony theft where the property was worth at least $25,000, but less than $100,000. Yardley appeals his conviction.

*Did the district court commit clear error when it failed to provide a unanimity instruction?*

Yardley argues that the district court committed clear error by failing to require the jury to decide unanimously about the value of the individual items Yardley stole. Yardley contends the State presented evidence that he exercised control over multiple items, but it failed to prove which items met the $25,000 threshold. The State responds by pointing out that Yardley took a truck, an attached trailer, and tools on the same date and time while all the items were connected. Because the items were stolen together, the State argues this case does not present a multiple acts issue, which means a unanimity instruction was not required. The State further argues that Yardley also failed to establish prejudice even if failing to provide a unanimity instruction was an error.

*Unanimous jury instructions*

A defendant in Kansas is entitled to a unanimous jury verdict. K.S.A. 22-3421; K.S.A. 22-3423(1)(d); *State v. Brown*, 298 Kan. 1040, 1055, 318 P.3d 1005 (2014). In multiple acts cases, where any single act could constitute the crime charged, the jury must be unanimous in finding which specific act constitutes the crime. See *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815 (2014). To guarantee unanimity, one of two things should occur: (1) The State must elect the particular act it is relying on for the charge; or (2) the district court must provide a unanimity instruction. *State v. Akins*, 298 Kan. 592, 618, 315 P.3d 868 (2014).

Kansas appellate courts review unanimity challenges under a three-part framework. *De La Torre*, 300 Kan. at 596. For the first step, the reviewing court looks at "whether a multiple acts case is presented. The threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged

crime. [Citation omitted.]" 300 Kan. at 596. "If the incidents in question are not legally or factually separate, there are not multiple acts. [Citations omitted.]" *State v. King*, 297 Kan. 955, 980, 305 P.3d 641 (2013). This is a question of law, which is subject to unlimited review. *De La Torre*, 300 Kan. at 596. If the court decides the case is not a multiple acts case, the analysis ends. See *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 (2007).

If the court determines that multiple acts were involved, the second step is to decide whether an error was committed either by the district court's failure to instruct on unanimity or the State's failure to inform the jury which act to use. If the court finds error, the third step is to evaluate any error for harmlessness. *King*, 297 Kan. at 979-80.

*Reviewability*

If there was an instructional error, but the defendant failed to request the instruction or object to its omission, the reviewing court applies the clear error standard. *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023). The court will decide "whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 317 Kan. at 242. The defendant must establish reversibility. 317 Kan. at 242. And "when examining whether the defendant has met that burden, the reviewing court makes a de novo determination based on the entire record." 317 Kan. at 242.

Here, at trial, the district court did not provide the jury with a unanimity instruction directing the jury to agree on what items were stolen. Yardley acknowledges he failed to request a unanimity instruction. Both parties agree that this court should apply the clearly erroneous standard to Yardley's claim. And because Yardley failed to request the jury instruction, he has the burden to show clear error.

7

*This is not a multiple acts case.*

Whether a case presents multiple acts is a question of law, over which this court has unlimited review. *King*, 297 Kan. at 979. "When a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime." 297 Kan. at 977. Multiple acts instructions are necessary when the facts show separate incidents that are factually and legally sufficient to satisfy all the elements of the crime. *State v. Soto*, 299 Kan. 102, 111, 322 P.3d 334 (2014). "If the incidents in question are not legally or factually separate, there are not multiple acts." *King*, 297 Kan. at 980.

Generally, four factors are used to determine whether multiple acts exist in a case:

"'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.' [*State v.* ]*Schoonover,* 281 Kan. [453,] 507[, 133 P.3d 48 (2006)]." *King*, 297 Kan. at 981.

Yardley stole Warfield's truck, trailer, and tools through one continuous action at the same time and location. There was no intervening event between actions to negate Yardley's continuous unauthorized taking of the truck, trailer, and tools. The State highlights that there also was not a fresh impulse for Yardley to commit additional crimes because the items were stolen at once. Thus, the four factors above suggest that this is not a multiple acts case.

Yardley, however, argues that the Kansas Supreme Court has recognized that there is no universal test to determine whether the conduct constituted separate and distinct acts.

8

To support this position, Yardley relies on *State v. Allen*, 290 Kan. 540, 544, 232 P.3d 861 (2010). *Allen* stated: "There is no single test for whether conduct constitutes one act or separate and distinct multiple acts. Rather, the courts must look to the facts and the theory of the crime as argued to determine whether a jury verdict implicates unanimity issues." 290 Kan. 540, Syl. ¶ 2. To illustrate this principle, the Kansas Supreme Court looked at the unanimity problem when a defendant was found to be in ongoing possession of separate amounts of cocaine. The issue was "whether possessing the cocaine in Allen's pocket was a separate and distinct act from possessing the cocaine in the bedroom for purposes of possessing with intent to sell." 290 Kan. at 542. The court reasoned that the jury could have reached a conclusion in different ways, which would present a unanimity problem:

> "All 12 jurors may have agreed that Allen owned the cocaine in the bedroom and intended to sell it. This situation presents no unanimity problem.
> "All 12 jurors may have agreed that Allen owned only the cocaine in his pocket and intended to sell it. This situation also presents no unanimity problem.
> "Ten of the jurors may have believed Allen owned the cocaine in both his pocket and the bedroom and intended to sell all of it. One juror may have believed Allen owned the cocaine in his pocket but did not intend to sell it and also have believed he owned the cocaine in the bedroom and intended to sell it. And one juror may have believed he did not own the cocaine in the bedroom but he owned and intended to sell the cocaine in his pocket. This scenario presents a unanimity problem: the jurors did not agree on the possession element of the possession with intent to sell." 290 Kan. at 544-45.

Yardley argues that the scenario above is like his case. He contends that there were multiple combinations of property value based on which items he stole that the jury could have relied on to reach a $25,000 threshold. He maintains that the State presented evidence that Yardley exercised control over multiple items and no single item was worth more than $25,000 on its own, so the State needed to rely on a theory that Yardley stole multiple items to secure its conviction.

9

He provides five total categories of Warfield's losses—including one for his truck, another for his trailer, a third for his tools, a fourth for the cash, and a fifth category for unitemized tools and equipment. He contends that if some of the jury only credited testimony for the first three categories, then the threshold amount of the stolen items would be under $25,000. And this would be a problem because the jury would not have been unanimous as to what actually brought the jury to the threshold dollar amount. Thus, according to Yardley, his scenario is similar to *Allen* because the jurors did not agree on the threshold loss element of felony theft.

The State responds by pointing out that a single taking is not a multiple acts case. The State contends *State v. Davis*, 275 Kan. 107, 61 P.3d 701 (2003), shows that Yardley's conduct does not present a multiple acts case. In *Davis*, the defendant allegedly took keys, a cell phone, and cash after the defendant shot the victim. The defendant on appeal argued that the language of the jury instruction for aggravated robbery would confuse the jury as to what actions constituted a robbery. 275 Kan. at 116. In other words, the defendant asserted that members of the jury could have found he took property from different people, but the jury instruction did not specify which person the defendant threatened or took from by force. 275 Kan. at 116. The Kansas Supreme Court disagreed with the defendant. The court noted that the case may present an alternative means issue rather than a unanimity issue for the crime. It explained, in situations where a single offense may be committed in more than one way, the jury must have unanimity as to the guilt for the single charged crime. But as to the means by which the crime was committed, unanimity is not required so long as substantial evidence supports each alternative means. 275 Kan. at 118. Here, the State argues that like in *Davis*, Yardley stole a truck, an attached trailer, and tools at the same time, and the jury was not obligated to agree on an exact itemization as to which items were stolen.

The State also relies on *Voyles*, 284 Kan. at 253-54, where the Kansas Supreme Court found multiple acts existed because the defendant's criminal conduct occurred over

several months and at different locations. And it points to *State v. Foster*, 290 Kan. 696, 714, 233 P.3d 265 (2010), where no unanimity issue arose because the defendant made several threats as the result of a single impulse to terrorize occupants in an apartment, which did not require a unanimity instruction for the criminal threat charge. The State notes these citations highlight the time, place, and manner of an act determines whether multiple acts existed.

The State maintains the taking of Warfield's property did not occur at different times. It also did not occur at different locations nor did Yardley's actions constitute different acts for the purposes of felony theft. Put differently, the property was stolen in a single action. And the State argues that there was no intervening event or fresh impulse between the truck, tools, and trailer being taken because it occurred in a single event.

Yardley did not carry his burden to show this case presented a multiple acts situation. Yardley does not address how stealing multiple items attached together in one single action would make this a multiple acts case. He assumes that the jury could have valued the property differently, which might be true. But even so, this assumption aside, the jury had to find that Yardley stole property worth at least $25,000, but not more than $100,000. The jury saw surveillance footage and heard witness testimony specifically concerning Yardley's single action in taking the truck, trailer, and tools. The instructions required the jury to find the theft elements unanimously based on that one single action on August 20, 2022, to find Yardley guilty. The jury did so.

For these reasons we affirm Yardley's conviction because this is not a multiple acts case and therefore the court did not err in failing to provide a unanimity instruction.

*Even if Yardley were to show multiple acts, Yardley does not explain how he was prejudiced by failing to give the jury instruction requiring unanimity.*

Even if we found that this is a multiple acts case, we would still need to determine whether the error in failing to provide the instruction was reversible. To do so, we must be firmly convinced that the jury would have reached a different verdict had the district court given the unanimity instruction. *Bentley*, 317 Kan. at 242. In other words, "[i]f the district court has committed error in failing to give a unanimity instruction, that failure will be clearly erroneous, and thus reversible, if the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *State v. Trujillo*, 296 Kan. 625, Syl. ¶ 2, 294 P.3d 281 (2013).

Yardley's argument implies that by asking the jury to provide a unanimous verdict on each stolen item his trial result would have been different. Yardley asserts that Warfield's valuation of his property was inconsistent and thus the credibility of his testimony is suspect. And he claims—without explanation or citation to the record—that based on common knowledge and experience, it is likely that some jurors doubted that Warfield had $11,500 in cash in his truck. In sum Yardley states that "given the inconsistent, suspicious, and unsubstantiated valuations given by Duane Warfield in this case, it is overwhelmingly likely that the jurors did not credit his testimony in full."

In response, the State points out that Warfield's testimony consistently showed the property was valued over $25,000, and Warfield always maintained that his truck, trailer, and tools were stolen from the start of the investigation to the end of trial. The State highlights that the jury was left with two options in this case: (1) to believe Warfield and convict Yardley, or (2) to not believe Warfield and acquit Yardley. And their verdict reveals they believed Warfield.

Yardley fails to recognize that "[i]t is for the jury to resolve questions of credibility." *State v. Finley*, 273 Kan. 237, 247, 42 P.3d 723 (2002). The jury assessed whether the property was at least $25,000, but not more than $100,000, which means the jury evaluated the testimony of the witnesses to assess the value of the property. While Yardley asserts that the district court's restitution findings discredited Warfield's testimony, restitution is a part of sentencing; it is not a part of a jury determining guilt. See *State v. Robison*, 58 Kan. App. 2d 380, 384-86, 469 P.3d 83 (2020).

Yardley also argues that it is nearly impossible that the jury agreed upon the same valuation when reaching its verdict. Even if Yardley has shown that a unanimity instruction was warranted, he failed to show the prejudice required for reversal. The jury had two options to convict. On the one hand, the jury could have found Yardley guilty of theft where the property stolen was worth at least $1,500, but less than $25,000. On the other hand, the jury could have found Yardley guilty of theft where the value of the property was at least $25,000, but less than $100,000. These options show that if the jury did not believe unanimously that the truck, trailer, and tools were worth at least $25,000, it could have found Yardley guilty of the lesser offense or not guilty.

Yardley does not explain how his trial result would have been different if the jury received an instruction advising it to determine the value of each individual item. The jury heard evidence about allegedly stolen items and determined the items were stolen and that their value fell between $25,000 to $100,000. By choosing to convict where the property is at least worth $25,000, the jury was unanimous in concluding that Yardley was guilty of severity level 7 theft.

Just because the jury did not provide a detailed, itemized finding of the stolen items does not mean that with a detailed list the result would have been different. We are not firmly convinced the jury would have reached a different conclusion but for the alleged error.

Affirmed.